377 So.2d 268 (1979)
Giacomina AVEGNO
v.
Emory BYRD, Jr.
No. 64385.
Supreme Court of Louisiana.
November 1, 1979.
Rehearing Denied December 13, 1979.
*269 Roy L. Price, Metairie, for plaintiff-applicant Doris Hebert.
Guy W. Olano, Jr., Kenner, for defendant-respondent.
SUMMERS, Chief Justice.
On July 14, 1975 Giacomina Avegno, also known as Jennie P. Avegno, entered into an agreement with Emory Byrd, Jr., whereby she was to sell to him four parcels of immovable property located in the City of Kenner, Louisiana, and three parcels of immovable property located in the City of New Orleans, Louisiana. Two employees of Doris Hebert Realtor acted in the transaction, Mary Elinor Dominque "Jinx" Sloan as agent for Mrs. Avegno and her two daughters-co-owners and Emory Byrd, Sr., as agent for Emory Byrd, Jr.
The agreement, upon a standard form provided by the realtor, stipulated in pertinent part that the seven parcels were to be sold:
"for the sum of one hundred four thousand Dollars and no/100 ($104,000-) Dollars, on the terms of 26,000 cash Balance to be carried by owner at his option.
"This sale is conditioned upon the ability of purchaser to borrow upon this property as security the sum of $78,000by a mortgage loan or loans at a rate of interest not to exceed 8¾% per annum, interest and principal payable on or before 20 years in equal (monthly) (annual) installments.
"Should purchaser, seller or agent be unable to obtain the loan stipulated above within 30 days from acceptance hereof, this contract shall then become null and void and the agent is hereby authorized to return the purchaser's deposit in full.
". . .
"Act of sale at expense of purchaser to be passed before Lendors Notary, on or prior to Sept. 1st 1975, provided that if bona fide curative work in connection with title is required, parties herewith agree to and do extend the time for passing of act of sale by forty-five days.
"Upon acceptance of this offer, vendor and purchaser shall be bound by all its terms and conditions, and purchaser becomes obligated to deposit with seller's agent immediately 10% of the purchase price amounting to $10,400 Demand Note payable at act of sale ...."
The agreement was signed by Emory Byrd, Jr., and Jennie P. Avegno.
As deposit on this purchase and sale agreement Emory Byrd, Jr., executed a demand note in the sum of $10,400 payable to *270 Doris Hebert Realtor and delivered to the agent for deposit in escrow.
Byrd apparently experienced difficulties in obtaining the $78,000 financing required; in addition, he had surveys made which revealed that one of the New Orleans houses had steps which encroached on the City's property and that another had a neighboring lot's fence encroaching on it. In mid or late August 1975 it became known to Jinx Sloan that Byrd would probably decline to take title to the properties. On August 25, 1975 the realtor's attorney and notary dispatched a letter to Mr. Byrd which contained the following language:
"As you know, the agreement to purchase signed by you on July 14, 1975 calls for your taking title to the property owned by Mrs. Avegno and her two daughters by September 1, 1975 ... I have discussed with Mrs. Avegno's representative the question of the alleged survey encroachments and have been advised that these encroachments do not exist and do not constitute any cloud on the title. The so-called stoop encroachment on Mistletoe Street of the property fronting on Apple Street can easily be removed by simply providing a one step ladder into the residence. The sellers have indicated they are willing to do this.
"Accordingly, I must advise you that the sale of this property has been set for passage in my office on Friday, August 29, 1975 at 4:00 P. M. The Avegno family has instructed me to advise you that your failure to appear at the act of sale will result in your being in default under the contract and they are by this letter making a formal tender of title to you. Under the circumstances, your refusal to accept title will result in the penalty provisions of the contract being invoked."
On the evening before or on the morning of the day set for passage of the act of sale, the notary, vendors and agents received telegrams or mailgrams from Byrd which stated:
"Pursuant to the purchase agreement entered into and accepted on July 14, 1975... and pursuant to the condition of the ability of the purchaser to borrow upon this property the sum of $78,000 by mortgage loan within 30 days upon acceptance, and since no written commitment has been issued from any lendor purchase agreement has become null and void and of no effect. Further the property is unmerchantable because of encroachments which are suggestive of litigation, demand is hereby made for the return of the demand note placed on deposit.
Emory A. Byrd Jr."
On February 20, 1976 Mrs. Avegno's attorney wrote Doris Hebert Realtors demanding the endorsement of the note over to Mrs. Avegno as a necessary step in her preparing to sue Mr. Byrd and at some unspecified time the reverse of the note was endorsed: "Without Recourse, pay to the order of Mrs. Giacomina Avegno [s/] Doris Hebert, Realtor Doris Hebert".
On March 31, 1976 Mrs. Avegno filed a petition in the 24th Judicial District Court, Parish of Jefferson. Emory Byrd, Jr., was made defendant. The petition alleged that Mrs. Avegno was the holder of a promissory note made by Byrd, payable to the order of Doris Hebert Realtor and subsequently endorsed without recourse to Mrs. Avegno. The petition recited that Byrd had executed the purchase and sale agreement, annexed and incorporated a copy of that agreement, and claimed that the agreement had required a 10% deposit amounting to $10,400. Mrs. Avegno alleged that on August 29, 1975, with due notice, the sellers appeared and stood ready, willing and able to pass a merchantable title to the defendant and that the defendant failed to appear. The petition then recited a second time that Doris Hebert Realtor was named payee on the promissory note and had endorsed the note to Mrs. Avegno and that the note was made in a principal amount of $10,400 with interest and attorney's fees, that no payments had been made on the note despite amicable demand and then prayed for judgment against Byrd in the principal sum of $10,400 with interest, attorney's fees and costs.
*271 On June 10, 1976 Emory Byrd, Jr., filed an answer, third party demand and reconventional demand. In substance, the answer denied the allegations of the petition. It then recited the condition that financing be available to the purchaser and alleged that Byrd had made a good faith effort to obtain financing and further that the title was unmerchantable and the agreement therefore void. The answer concluded by alleging that the note was defective for want of consideration, that the rate of interest stated thereon was usurious, and that demand had been made for the return of the note.
As a petition in reconvention, the answer alleged that Giacomina Avegno had breached the contract to sell because encroachments rendered the titles unmerchantable and claimed the return of the deposit together with additional damages specified in the agreement to amount to a total of twice the amount of the deposit. Over and above the punitive damages specified in the agreement, Byrd prayed for various special and general damages alleged to have accrued out of Mrs. Avegno's breach.
As a third-party petition agaisnt Doris Hebert Realtor the answer alleged that the realtor had negotiated the note to Mrs. Avegno in bad faith and without authority and then prayed for various items of special and general damages.
Mrs. Avegno answered the reconventional demand with a general denial and then supplemented and amended her original petition to add Jinx Sloan and Doris Hebert Realtor as alternative defendants in solido. To this Jinx Sloan and Doris Hebert Realtor interposed a dilatory exception of vagueness; after hearing, the exception was overruled.
On October 6, 1977, Emory Byrd, Jr., moved for summary judgment on the ground that there was no issue as to material fact; the matter came on for hearing on October 21, 1977, and after hearing the motion was denied.
On January 18, 1978 the case was tried on the merits. The trial court found as matters of fact that the fence on one lot constituted an encroachment suggestive of litigation, that the encroachment justified Byrd's withdrawal from the sale, and that notice was given of his withdrawal upon that ground. The court went on to find the purchase and sale agreement indivisible so that the defect in the Apple Street parcel abrogated the entire transaction. Because the title was unmerchantable, the trial court pretermitted consideration of Mrs. Avegno's willingness to finance the transaction and her demand against Byrd was dismissed.
Having found that the defective title avoided the purchase and sale agreement, the court held that the double-damages provision for breach did not apply and dismissed Byrd's reconventional demand against Mrs. Avegno.
In ruling upon Byrd's third-party demand against Doris Hebert Realtors, the trial court referred to the Louisiana Real Estate Commission regulations established under the authority of La.Rev.Stat. 37:1436(E) as it stood at the time of the confection of the purchase and sale agreement; (the statutory authorization is now found at La.Rev. Stat. 37:1435(F)):
"14. Escrow AccountsImmediately upon becoming licensed, each broker shall open and maintain an escrow (trust) account into which they shall deposit all monies, including rentals, or other things of value received in trust on behalf of clients.
". . .
"E. Monies received and deposited in escrow (trust) accounts shall be removed and/or disbursed therefrom only upon:
"1. Mutual consent of buyer(s) and seller(s)When any funds which are held in escrow (trust) are designated to be compensation to the broker or cooperating broker, such funds shall be disbursed from the escrow account and transferred to the personal account of the broker only upon said compensation being earned and with the consent of the owner of the funds.
"2. Court order."
*272 The trial court apparently read this to provide two alternative general methods of disbursement: mutual consent and court order. A reading of the various regulations on the pages included in the record suggests rather that "Mutual consent" is a caption, and that the mutual consent provision is a special one, restricted to the broker's withdrawal of his compensation. If correct, this interpretation would leave court order as the only available method of authorizing general disbursements such as the return or award of a deposit of earnest money. Under either interpretation, however, the negotiation of the promissory note by Doris Hebert to Mrs. Avegno was unauthorized because the trial court found that it was without the consent of Mr. Byrd and without any court order. The trial court held that the broker's unauthorized negotiation of the note was "clearly actionable"; while noting that the measure of damages was difficult, the court went on to give its opinion that Mrs. Avegno would not have proceeded as readily on the contract as she in fact did on the note, that the plaintiff obtained a more favorable position by acquiring the note, and that the suit on the note as opposed to a suit on the contract worked an additional detriment to the defendant and had an effect upon his credit standing. The court then cast the third-party defendant in a sum stated to include computations for attorney's fees to defend the suit as well as for loss of reputation; in all the award was $3,500.
Doris Hebert Realtor took a suspensive appeal to the Court of Appeal for the Fourth Circuit, alleging error in the trial court's judgment. The appellant argued that the surrender of the promissory note to the seller was not a violation of the Louisiana Real Estate Commission's Rule 14(E) because, it was argued, Mrs. Avegno's suit rested upon the purchase and sale agreement and her possession of the note did not enhance her position. It was also argued that the damages awarded were erroneous and that the third-party plaintiff had failed to prove the elements of damages awarded by the trial court.
Emory Byrd, Jr., the appellee, argued that the damages were insufficient to cover his costs and damages actually incurred, that Doris Hebert Realtor had received specific written directions to return the deposit to Byrd and that the transfer of the note to Mrs. Avegno constituted a breach of a fiduciary duty.
The Court of Appeal held that the suit by Mrs. Avegno against Emory Byrd, Jr., referred to the note as due and owing but fairly alleged the basis of the action as breach of contract. Thus that court held that
"While the propriety of Doris Hebert, Realtor's action in surrendering the note to Avegno may be questioned, it did not enhance Avegno's rights nor prejudice the position of Byrd ....
"... Under these circumstances, we find no statutory or contractual basis upon which we are empowered to affirm an award of damages in favor of Byrd, notwithstanding our acknowledgement that the record supports the conclusion reached by the able trial judge that Byrd was obliged to expend approximately $3,500 (the amount awarded) in defending the litigation with which we are here concerned."
Finding that the realtor's actions were culpable, the Court of Appeal cast the appellant for costs although the judgment of the trial court was reversed.
From this reversal, Emory Byrd, Jr., sought here Writs of Review which we granted. 370 So.2d 575. The application argued that the Court of Appeal erred in not finding Doris Hebert, Realtor liable for an actionable breach of a fiduciary duty and in reversing the trial court's award of damages for the wrongful transfer of the promissory note. Doris Hebert, Realtor, answered; both parties' briefs merely reiterate their arguments to the Court of Appeal.
There is some question whether Byrd's third-party demand was the correct vehicle for asserting his claim against Doris Hebert where the third-party demand has been more usually viewed as an extension of the *273 former call in warranty. That is, an almost universal assumption is to the effect that the third-party demand is solely for contribution or indemnification in the event the defendant is cast in judgment on the plaintiff's principal demands, and that a third-party plaintiff can recover only where the original plaintiff recovers against the original defendant. See, e. g., Bolin v. Hartford Accident & Indemnity Company, 204 So.2d 49 (La.App.1967). Were this question to be answered in the affirmative, we should be compelled to affirm the reversal of the trial court's judgment and consideration of the appellant's assignments of error would be pretermitted.
Such a determination would be in substance a determination that Byrd's claim could not be brought by the action authorized by Article 1111 of the Code of Civil Procedure, or in other words that Byrd had no cause of action. Thus it is clear that such a determination would be no more and no less than the raising sua sponte by this Court of the peremptory exception of no cause of action under Article 927 of the Code of Civil Procedure: "The . . . failure to disclose a cause of action .. may be noticed by either the trial or appellate court of its own motion." Although the issue has never arisen before this Court, we take "appellate court" to apply as well to this Court as to the Court of Appeal.
However, Article 928 of the Code of Civil Procedure provides that the peremptory exception may be pleaded at any stage of the proceedings prior to the submission of the case for judgment. This rationale applies as well to the appellate courts, for amendment of the pleadings after submission of the cause, absent a motion for leave to amend and a grant of that motion, would seriously disrupt the orderly process of decision. In the instant case no exception was raised in any pleadings at any stage of the proceedings although the issue was argued during oral argument in this Court. Thus any consideration of the propriety of a third-party demand for the purpose asserted by Byrd would be untimely. This consideration is strengthened by the reflection that Byrd's claim could with perfect propriety have been brought as a separate action against Doris Hebert, and the two principal actions, arising out of the same transactions, could most probably have been consolidated for trial and appeal. Thus no prejudice to the defendant appears to result from pretermitting a decision on the merits of the procedural question and the character of that question as a waivable exception appears more clearly.
Passing to the merits of Byrd's application, he argues that the unauthorized negotiation of the promissory note by the realtor constitutes an actionable breach of fiduciary duty and that this wrongful transfer renders Doris Hebert liable to respond to him in damages. Doris Hebert, on the other hand, argues that the surrender of the note was not a violation of the Real Estate Commission's regulations and that Byrd neither suffered nor proved damages consequent upon the negotiation.
The provision of Rule 14(E) of the regulations of the Real Estate Commission cited by both courts below and quoted above applies in its own terms to "all monies... or other things of value received in trust on behalf of clients." Whether the promissory note constituted "money" within the acceptation of the rule, it was certainly a "thing of value". Moreover, having been given to Doris Hebert in escrow, it was unquestionably by her "received in trust on behalf of [a] client". Thus the rule is clearly applicable to the promissory note in question. Where the rules governing the profession create a duty in favor of the public, a breach of that duty to the damage of a member of the public, within the class sought to be protected by the rule, is actionable under Article 2315 of the Civil Code just as is any other act that causes damage to another.
Further, Section 1447 of Title 37 of the Revised Statutes, as it stood at the time of the transaction in question, required brokers to provide a bond for their performance and authorized suits upon the bond for injuries suffered as a result of misrepresentations or misbehavior by the broker or his *274 agents. Section 1454 of that Title, now Section 1455, listed nearly a score of causes for suspension or revocation of brokers' licenses, a list now doubled in length. Perusal of the professional offenses there listed compels the conclusion that the legislature intended to create a fiduciary relationship between brokers and their clients. Thus Section 1454(A) in part proscribed:
"(1) Making any false promises or any substantial misrepresentations; or
"(2) Acting for more than one party in a transaction without the knowledge and consent of all parties thereto; or
"(3) Pursuing a flagrant and continued course of misrepresentation or making of false promises through agents, salesmen, advertisements or otherwise; or
"(4) Failure to account for or to pay over any monies belonging to others coming into the possession of the licensee whenever legally obligated, or failure to deposit monies or things of value received on behalf of clients in a separate banking account; ...."
Particularly subsections (2) and (4) have the unmistakable stamp of the fiduciary impressed upon them.
Thus we are of the opinion that Doris Hebert, Realtor had a fiduciary duty to his client, Byrd, and that a breach of that duty to Byrd's damage is actionable under Article 2315 of the Civil Code. The trial court was correct in so holding and the Court of Appeal erred in reversing that judgment.
The trial court found and the Court of Appeal agreed without affirming that Byrd had suffered substantial damages as a proximate result of Doris Hebert's unauthorized negotiation of the promissory note. The Court of Appeal's reversal of the trial court was predicated principally upon its holding that no statute or contractual provision authorized an affirmance of the award of damages; that conclusion itself rested upon a determination that the original petition by Mrs. Avegno "although referring to the note as being due and owing, fairly alleges the basis thereof as breach of contract" and that therefore the negotiation of the note to Mrs. Avegno did not enhance her position in the lawsuit.
We disagree. The petition filed by Mrs. Avegno twice recites the existence and due negotiation of the note as giving rise to an obligation which had not been paid and for which judgment was prayed; the petition referred to the contract but once. It clearly set forth two causes of action, one on the note and one on the contract. A two-count complaint is clearly more advantageous to the plaintiff than a one-count complaint and correspondingly more disadvantageous to the defendant. Certainly Mrs. Avegno thought so, for she obtained the note as part of her preparation for filing suit. In addition, the trial court found as a matter of fact that Mr. Byrd's credit standing had suffered and his ability to borrow money had been damaged by the mere institution of the suit upon a note. There was sufficient evidence in the record upon which the trial court could have made such a determination, and its finding of fact was therefore not an abuse of its much discretion; accordingly, reversal of its finding was error. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).
There was evidence in the record from which the trial court could compute the special damages suffered by Mr. Byrd. The general damages are always somewhat speculative or arbitrary, and the amount awarded for them was not so excessive as to provoke the reversal of the judgment. The Court of Appeal, in fact, recognized the justice of the special damage award although it did not affirm it, and did not pass on the propriety of the general damage award. Thus we affirm the finding and award by the trial court.
For the reasons assigned, the decision by the Court of Appeal is set aside insofar as it reversed the judgment of the trial court, and the judgment and award by the trial court are reinstated. The costs of this appeal are assessed to the appellee.
MARCUS, J., dissents and assigns reasons.
*275 MARCUS, Justice (dissenting).
In simple terms, we have here a contract by which Avegno agreed to sell certain real property to Byrd for a price conditioned on Byrd's ability to finance part of the purchase price. The agreement called for a deposit by purchaser with seller's agent. The deposit (note) was made, but the sale did not take place. Agent negotiated the note to seller. Seller sued purchaser who third partied agent for damages. The trial judge found seller's title suggestive of litigation (unmerchantable) and dismissed her demand against purchaser. The trial judge also found agent's unauthorized negotiation of the note to seller was "clearly actionable" (breach of duty) and rendered judgment for damages on the third party demand in favor of Byrd and against agent. Agent appealed. The court of appeal reversed. Byrd's application to this court was granted. The majority finds that agent breached a fiduciary duty to Byrd who suffered damages as a result thereof. I do not agree.
First, La.Code Civ.P. art. 1111 provides that the defendant in a principal action by petition may bring in any person who may be liable to him "for all or part of the principal demand." Such is not the case here. Agent could not be liable to Byrd for all or any part of the principal demand. La.Code Civ.P. art. 927 provides that an exception of no cause of action is a peremptory exception; the court cannot supply objections of prescription and res judicata which must be specially pleaded; however, the failure to disclose a cause of action may be noticed by the appellate court on its own motion. La.Code Civ.P. art. 928 provides that a peremptory exception may be pleaded at any stage of the proceeding in the trial court prior to a submission of the case for a decision. In my view, the latter provision does not preclude this court from noticing the failure to disclose a cause of action on its own motion under art. 927.
In any event, on the merits, I do not consider that agent's breach of fiduciary duty caused damages to Byrd. Avegno's action against Byrd was based on a claim for breach of a sales contract. The breach of duty by agent in negotiating the note to Avegno did not enhance Avegno's position in her lawsuit against Byrd. Any damages to Byrd resulted from the action by Avegno on the sales contract and not because of the alleged cause of action on the note. Hence, I do not find that the damages, if any, to Byrd were caused by agent's improper negotiation of the note to Avegno.
Accordingly, I respectfully dissent.