388 So.2d 784 (1980)
STATE of Louisiana in the Interest of Brent Vail Joseph BRUNO.
No. 67771.
Supreme Court of Louisiana.
September 3, 1980.
*785 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Marion B. Farmer, Dist. Atty., Abbott J. Reeves, Roy K. Burns, Asst. Dist. Attys., for plaintiffs-respondents.
Glass & Reed, John Wilson Reed, New Orleans, for defendant-relator.
BLANCHE, Justice.
This proceeding involves a sixteen year old child who has been charged in juvenile court with second degree murder, and whom the state is seeking to have transferred to district court for trial as an adult pursuant to R.S. 13:1571.1, et seq. At present, there has been neither an order of transfer nor an adjudication of delinquency. On motion of the state and over objection of the child, the juvenile court ordered the child to submit to a psychiatric and psychological examination, to take place at a state facility, for the purpose of evaluating the child's "amenability" to the juvenile system. We granted writs on the juvenile's challenge of the court's power and authority to issue the order.
The juvenile transfer statute, as amended in 1978, provides that a juvenile court judge may transfer a juvenile, charged with delinquency based on criminal conduct, to an adult court if a hearing is conducted, proper notice is given, and probable cause exists to believe that the child committed first or second degree murder, manslaughter, aggravated rape, armed robbery, aggravated burglary, or aggravated kidnapping. R.S. 13:1571.1. In State in the Interest of Erin Hunter, Docket No. 65,512, 387 So.2d 1086 (1980) (Blanche, J. dissenting), this Court held that statute unconstitutional because of "vagueness caused by its failure to set forth standards to enable juveniles to protect themselves against arbitrary and discriminatory forfeiture of the special rights and immunities of juvenile court jurisdiction", and because the statute allowed for transfer of juveniles "without regard to the individual merits of each case". However, this Court further held that the statute, as it existed prior to the passage of Act No. 460 of 1978, requiring the judge, before transferring a child to adult court, to find "reasonable grounds to believe that the child is not amenable to treatment of rehabilitation through facilities available to the juvenile", was still in effect.
In State v. Everfield, 342 So.2d 648 (La. 1977), we interpreted the above phrase regarding amenability to treatment and rehabilitation in the juvenile system as sanctioning transfer of only those youths for whom there is "no hope of treatment or rehabilitation in the types of facilities utilized by juvenile courts." In addition, we suggested considerations relevant to the application of this standard. These factors include:
"... age, maturity and sophistication of the juvenile; the nature and seriousness of the offense charged; prior acts of delinquency, if any, and their nature and seriousness; past efforts at rehabilitation and treatment and the juvenile's response thereto; whether the juvenile's behavior might be related to physical or mental problems; and the techniques, programs, personnel and facilities available to the juvenile court system which might be competent to deal with the problems of the particular juvenile whose transfer is being considered." Everfield at 655-656.
In the instant case, the juvenile judge ordered a psychological examination of the child for the purpose of securing information pertinent to these factors.
Counsel for the child argues that various provisions of the Code of Juvenile Procedure bar the juvenile court from ordering a child to undergo a psychological examination regarding his amenability to treatment and rehabilitation in the juvenile system.
The Code of Juvenile Procedure defines three categories of children over whom jurisdiction is exercised: a "delinquent child"; a "child in need of supervision"; and a "child in need of care". A "delinquent child" is a child who has committed a "delinquent act", C.J.P. arts. 13(12) and 13(7), and a "delinquent act" is a violation of the criminal law. C.J.P. arts. 13(12) and 13(7). A "child in need of supervision" is a child who violates the school attendance laws, is *786 ungovernable, or who absents himself from home. C.J.P. art. 13(13). A "child in need of care" is a child whose parent inflicts physical, mental or emotional abuse upon him. C.J.P. art. 13(14). The Code establishes various procedures for dealing with each of these classifications of children.
In the chapter on pre-adjudication motions and relief, C.J.P. art. 61 provides:
"A. On its own motion or on the motion of the child or district attorney, the court may order any child concerning whom a petition has been filed to be examined by a physician.
"B. On its own motion or on the motion of the child or district attorney, after a contradictory hearing and a showing of good cause, the court may order any child alleged to be in need of supervision or care to be examined by a psychologist or psychiatrist.
"C. On motion of the child, the court may order a child concerning whom a petition has been filed, to be examined by a psychologist or a psychiatrist.
"D. Any examination as herein provided shall be made and the findings submitted to the court within thirty days of the date the order is entered. Such period may be extended by the court for good cause.
"E. Copies of any reports of findings submitted to the court shall be available to counsel for all parties.
"F. Nothing contained in this Article shall amend R.S. 13:1583(C)."
R.S. 13:1583(C), referred to in C.J.P. art. 61, § F, provides:
"C. If a juvenile is adjudged delinquent and in need of supervision, the juvenile court may order, when in the discretion of the judge such is appropriate, that the juvenile's parents or guardian, as well as the juvenile, participate in a suitable counseling program as the court deems will aid in the rehabilitation of said juvenile."
Counsel for the child argues that Section A of article 61 allows a simple physical examination, other than a psychological examination, by a physician, and provides that it may be ordered upon motion of the state, the child or the court; Section B provides that the state or the court may obtain a psychological examination, but only as to children alleged to be in need of supervision or care, and not as to children alleged to be delinquent; Section C provides that the child himself may obtain a psychological or psychiatric examination in any case. Counsel argues the scheme is a comprehensive one that considers every possibility and, by not stating that the state or the court may obtain a psychological examination of a child alleged to be delinquent, art. 61 clearly prohibits it and, consequently, prohibits a motion which concerns information pertinent to a question of transfer of a delinquency adjudication to adult court.
Courts should construe a statute so as to accomplish the purpose for which it was enacted and to give effect to the legislative will. Board of Trustees of E. Baton Rouge Mortgage Finance Authority v. All Taxpayers, 336 So.2d 306 (La.App. 1st Cir. 1976); Johnson v. Sewerage District No. 2 of Parish of Caddo, 239 La. 840, 120 So.2d 262 (1960). A meaning which the legislature never intended to be covered should not be imposed. Smith v. State through Dept. of Public Safety, 366 So.2d 1318 (La. 1978); Emmons v. Agriculture Ins. Co., 245 La. 411, 158 So.2d 594 (1963).
We believe the legislature, in enacting C.J.P. art. 61, considered it a provision which would permit a juvenile judge, prior to an adjudication, to obtain medical information in cases where a knowledge of the child's mental or physical condition is essential to a proper adjudication of the case. In cases where a child is alleged to be in need of care or supervision, the child's mental or physical condition is a primary factor in the resolution of the allegations. However, the same is not true in cases where the child is alleged to be delinquent because, in those situations, the determination to be made is a factual one as to whether the juvenile committed a criminal act. Consequently, we conclude art. 61 was never intended to apply to delinquency proceedings. We are supported in this conclusion by C.J.P. art. *787 61, § F, which states that nothing in the article shall amend R.S. 13:1583(C), a provision which does deal with children adjudged delinquents.
Notwithstanding the conclusion, we do not believe that the legislature intended for art. 61 to prohibit a juvenile judge from obtaining psychological information when the same would be of relevant and probative value in a juvenile transfer hearing.
The legislative scheme for transfer of juveniles to adult court requires a full-blown hearing at which the child has a right to an attorney, and which involves the presentation of evidence by both the child and the state, including cross-examination of witnesses. R.S. 13:1571.2; R.S. 13:1571.3; R.S. 13:1571.4. Indeed, a hearing with effective assistance of counsel is required by due process of law. Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966); In re Gault, 387 U.S. 1, 12, 87 S.Ct. 1428, 1435, 18 L.Ed.2d 527 (1967). At the conclusion of the hearing, the juvenile judge is required to exercise his discretion and judgment as to whether the child is amenable to the juvenile system and, thus, whether the juvenile proceeding should be transferred to adult court. We do not believe the legislature, in enacting art. 61, intended to inhibit the judge's ability to fulfill this mandate.
For the above reasons, we conclude C.J.P. art. 61 does not prevent a judge from ordering a child in a juvenile transfer proceeding to undergo a psychological evaluation.
Finally, counsel for the child contends that, given the protections provided by the juvenile system, such an order violates the child's state and federal right against self-incrimination. It is argued that the burden is on the state to prove beyond a reasonable doubt that the child should be transferred to adult court, and that such an order requires a child to assist the state in the presentation of its case.
Both the United States and the Louisiana Constitutions provide that a person cannot be compelled in any criminal case to be a witness against himself. U.S.Const. Amend. V; La.Const. art. I, § 13. In addition to these constitutional provisions, R.S. 13:1571.4 states that a child, who is the subject of a transfer hearing, shall not be required to give evidence against himself.
The state argues that a psychological evaluation, like blood testing and fingerprinting, is not within the scope of the privilege. See Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); State v. Carthan, 377 So.2d 308 (La.1979); State v. Sheppard, 350 So.2d 615 (La.1977).
In Schmerber, supra, the United States Supreme Court held that "the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the state with evidence of a testimonial or communicative nature". See also State v. Carthan, supra; State v. Sheppard, supra. Because psychological examination of the juvenile will involve "evidence of a testimonial or communicative nature", it is evidence that falls within the scope of the privilege.
However, we conclude the psychological evaluation ordered in the instant case does not violate the privilege against self-incrimination for other reasons. We believe both the constitutional privilege against self-incrimination and the privilege provided by R.S. 13:1571.4 prohibits the use of compelled testimony regarding a person's guilt or innocence of a crime charged. The psychological evaluation is not being conducted for use at the adjudication hearing to determine the child's guilt or innocence of the crime charged, but as an aid to the court in its determination of amenability to treatment in the juvenile system. Consequently, it does not violate the child's right not to be compelled to give evidence against himself. Therefore, for these reasons, no statements, either inculpatory or exculpatory, made to the psychologist or psychiatrist during the examination, will be admissible in evidence at the trial on the merits of the child's guilt or innocence.
For the above reasons, the ruling of the juvenile judge is found to be correct, and the case is remanded for further proceedings not inconsistent with this opinion.
*788 LEMMON, J., concurs and assigns reasons.
CALOGERO, J., dissents and assigns reasons.
WATSON, J., dissents.
LEMMON, Justice, concurring.
While I substantially agree with the reasoning of the majority decision, I would allow an order for the psychiatric or psychological examination of a juvenile to be issued only after a determination that there is probable cause to believe the juvenile committed a crime enumerated in R.S. 13:1571.1.[1] Once probable cause has been established, it is a reasonable exercise of the court's inherent power to order the juvenile to submit to a psychiatric or psychological examination for the purpose of determining whether he is amenable to treatment or rehabilitation through facilities available to the juvenile court system.
Another important consideration is the self-incrimination problem if the juvenile judge reviews the psychiatric or psychological reports and the juvenile is ultimately tried in juvenile court (either because the juvenile judge denies transfer or a reviewing court reverses a transfer order). In that situation great care must be taken to insure that the right against self-incrimination is adequately protected, perhaps by reallotting the matter for adjudication by another juvenile judge who has not reviewed the reports which are pertinent only to the transfer hearing.
CALOGERO, Justice, dissenting.
The Code of Juvenile Procedure, made effective on January 1, 1979, is a comprehensive set of procedural and substantive rules governing the disposition of children in the juvenile justice system.
In Article 61 of that Code, provision is made for the examination of children of different legal classifications variously by a physician, psychiatrist, and/or a psychologist. The statute does not provide court authority for ordering the examination of a "delinquent" child by a psychiatrist or psychologist; and the majority so concedes.
To my mind, our inquiry on the issue presented in this case should cease at this point, for the procedures set forth in the Code of Juvenile Procedure make it unequivocally clear that a child charged with being a delinquent by commission of a criminal act may not, prior to an adjudication of guilt, be forced to submit to psychiatric and/or psychological examination.
In light of this statutory pronouncement on the topic, the majority poses unconvincing reasons for authorizing this additional court ordered examination to determine the delinquent child's amenability to help from the juvenile system.
Absent statutory sanction and, of course, constitutional permissibility, we should find no legal authority for a court's ordering a presumptively innocent child to be institutionalized, questioned, observed, and evaluated, without the benefit of counsel, by state appointed psychiatrists and/or psychologists, in advance of a determination of guilt or innocence, so that the judge may decide whether or not to have him tried as an adult and exposed to incarceration in the state penitentiary.
For these reasons, I dissent.
NOTES
[1] C.J.P. arts. 38-39 require a hearing within 72 hours, at which the state is required to prove the existence of a ground for continued custody, and this procedure provides the adequate safeguard.