429 A.2d 682

**COMMONWEALTH of Pennsylvania**

v.

**Howard Dale DOTSON, Appellant.**

Superior Court of Pennsylvania.

Submitted March 21, 1980.

Filed May 8, 1981.

Petition for Allowance of Appeal Denied Nov. 19, 1981.

---

1. Appellant, the children, and Children and Youth Services were each represented by a separate lawyer.

Ellen M. Burgraff, Assistant Public Defender, Carlisle, for appellant.

Edgar B. Bayley, Jr., District Attorney, Carlisle, for Commonwealth, appellee.

Before HESTER, WICKERSHAM and LIPEZ, JJ.

WICKERSHAM, Judge:

On October 11, 1978, the appellant, Howard Dale Dotson, entered Elby's Restaurant in Lemoyne, Cumberland County, at about 9:00 p.m. He was carrying a 12 gauge shotgun, wearing a black T-shirt, had a bandanna over his face and was accompanied by one other similarly clad youth. In his possession was a 12 gauge shell. Within one hour the Lemoyne Police Department, working with the Upper Allen Township Police, had appellant in custody and under arrest along with several others. He was charged with criminal conspiracy to commit robbery and criminal attempt to commit robbery.

Being under the age of 18 years (age 17, born June 5, 1961), Dotson's activity came within the purview of the "Juvenile Act," 42 Pa.C.S. § 6301 et seq. At the time of the Elby's caper, Dotson was an escapee from Cornwall Heights juvenile detention facility.

The Cumberland County Juvenile Court, by President Judge Dale F. Shughart, conducted proceedings under Section 6355 of the Juvenile Act and ruled that the offenses should be prosecuted, and transferred the offenses to criminal court.

Thereafter, on February 12, 1979, defendant Dotson entered a plea of guilty to a felony in the second degree, criminal conspiracy to commit armed robbery, and was sentenced on May 1, 1979 to undergo imprisonment in a state correctional institution for a period of not less than two and one-half years, nor more than seven years. This appeal followed.[1]

1. STATEMENT OF QUESTIONS INVOLVED
WAS THE REPORT OF THE COURT PSYCHIATRIST OBTAINED IN VIOLATION OF THE JUVENILE'S FIFTH AMENDMENT RIGHT AGAINST SELF–INCRIMINATION?

598

We find no merit in the last three statements of questions involved and affirm as to those points on the basis of the opinion of President Judge Shughart filed August 23, 1979 per Pa.R.A.P.1925.

We will discuss the first issue raised by appellant, namely whether the burden is on the Commonwealth to prove the juvenile's noncommittability and, if so, whether the court can require the child to cooperate in being examined by a psychiatrist.

As we have seen, under Section 6355 of the Juvenile Act, the court before hearing a petition on its merits may rule that the offense should be prosecuted and transfer the offense to the court assigned to conduct criminal proceedings *if all of the following exist* :

(1) The child was 14 or more years of age at the time of the alleged conduct.

(2) A hearing on whether the transfer should be made is held in conformity with this chapter.

(3) Notice in writing of the time, place, and purpose of the hearing is given to the child and his parents, guardian, or other custodian at least three days before the hearing.

(4) The court finds:

(i) that there is a prima facie case that the child committed the delinquent act alleged

(ii) that the delinquent act would be considered a felony if committed by an adult; and

(iii) that there are reasonable grounds to believe all of the following:

(A) That the child is not amenable to treatment, supervision or rehabilitation as a juvenile through available facilities. In determining this the court may con-

DOES THE COURT'S RELIANCE ON AN IMPROPER FACTOR IN ORDERING THE TRANSFER COMPRISE REVERSIBLE ERROR? IS THE COURT'S STATEMENT OF REASONS ON THE ISSUE OF TRANSFER SUFFICIENT? MUST THE SENTENCE BE VACATED BECAUSE OF THE COURT'S FAILURE TO ACCORD PROPER WEIGHT TO STATUTORY GUIDELINES?

sider age, mental capacity, maturity, previous records and probation or institutional reports.

(B) *That the child is not committable to an institution for the mentally retarded or mentally ill.*

(C) That the interests of the community require that the child be placed under legal restraint or discipline or that the offense is one which would carry a sentence of more than three years if committed as an adult.

42 Pa.C.S. § 6355 (emphasis added).

Defendant states in his appellate court brief that the court compelled his cooperation with the psychiatrist by ordering that the Commonwealth would be excused from proving one of the statutory requirements for transfer if appellant did not cooperate.[2] Defendant contends that the Fifth Amendment protects a juvenile from being forced to cooperate with a psychiatrist whose report will be offered at proceedings to transfer the case to criminal court.

Instantly, in order to determine reasonable grounds to believe that the child was not committable to an institution for the mentally retarded or mentally ill, the court directed a psychiatric examination by Order of Court dated November 3, 1978, to be conducted by Mental Health/Mental Retardation Service.[3] Judge Shughart issued a supplementary

2.  At page 11 of appellant's brief he poses the issue thusly:
    "The issue arose initially because of the statutory requirement for certification that the juvenile not be commitable [sic] to an institution for the mentally ill. 42 Pa.C.S. 6355(a)(4)(iii)(B). Given the evidence in the record of the juvenile's prior psychiatric involvement, which was sufficient to raise the issue, the burden was properly on the state to prove his noncommitability.[sic] The court ordered the examination in order to enable the Commonwealth to meet its burden in this regard."

3.  At the first court hearing held October 12, 1978, the day following the criminal activity, various employees of Elby's Restaurant testified, as well as Jeffrey Laudenslager, a probation officer from Chester County Juvenile Court. Laudenslager traced Dotson's recent past record from 1975 on, advising *inter alia*, that Chester County had a psychiatric examination performed May 25, 1975, by Dr. Solomon Lippman, who recommended intensive psychiatric therapy at that time.

Order of Court dated November 6, 1978 specifying that the psychiatric examination being ordered was "solely for the purpose of determining whether the juvenile is committable to an institution for the mentally retarded or mentally ill" and further that "in view of the limited nature of the requested examination, the juvenile may either cooperate with the psychiatrist appointed or be deemed to have waived his right to assert that he is committable to an institution for the mentally retarded or mentally ill."

■ We hold that in a Section 6355 transfer proceeding, the juvenile court has an affirmative duty to make a finding that there are reasonable grounds to believe that the child is not committable to an institution for the mentally retarded or mentally ill. The Commonwealth, therefore, has the burden of showing reasonable grounds to support such a finding.

■ We hold further that in order to determine whether there are reasonable grounds for believing that a child is not committable, the juvenile court may direct that the child cooperate in a psychiatric examination or else be deemed to have waived his right to assert later that the juvenile court should not have decided that he was not committable. Common sense dictates that an obligation rests with the child to cooperate with the examining psychiatrist so that the court may reach a proper determination in this matter.

Our holding does not deny a child his constitutional right to counsel nor his right to have counsel present with him at the proposed examination. Our holding also permits the child to remain silent and not cooperate in the examination.[4]

Viewed in this light, the action of the lower court was entirely proper and fair to the child; the transfer was

4. Instantly the child did in fact cooperate with the examining psychiatrist, but claims he did so under compulsion by the juvenile court. He may not "have his cake and eat it too."

appropriate under all the circumstances and accordingly we affirm the judgment of sentence.[5]

LIPEZ, J., files a concurring statement.

LIPEZ, Judge, concurring:

I concur in the result for the reasons that 1) appellant, having pled guilty, may not raise nonjurisdictional arguments on appeal, *Commonwealth v. Riviera*, 254 Pa.Super. 196, 385 A.2d 976 (1978); and 2) the sentence and the reasons therefor are in compliance with *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977), and its progeny.

---

5. *Cf. Commonwealth v. Byrd*, 421 Pa. 513, 219 A.2d 293, *cert. denied*, 385 U.S. 886, 87 S.Ct. 181, 17 L.Ed.2d 114 (1966), where the defendant charged with murder was ordered by the Court to submit to a neuro-psychiatric examination subject to the limitation that he not be compelled to answer any questions propounded to him by those making the examination. *See Commonwealth v. Hale*, 467 Pa. 293, 356 A.2d 756 (1976) where the trial court erred by admitting evidence of a psychiatric examination of a defendant charged with murder, when the psychiatric examination was for the purpose of determining the defendant's guilt or innocence. Instantly the sole purpose of the exam was to determine the appropriate forum to hear the charges against the juvenile.