561 So.2d 62 (1990)
G.I. JOE, INC. and Mitchell Jurisich, Jr.
v.
CHEVRON U.S.A., INC., PIPELINE DIVISION, et al.
No. 89-CC-2332.
Supreme Court of Louisiana.
April 30, 1990.
*63 George Pivach, II, Pivach, Cossich & Pivach, Belle Chasse, for applicants.
David M. Culpepper, Murray A. Calhoun, Milling, Benson, Woodward, Hillyer, Pierson & Miller, David L. Duplantier, New Orleans, for respondents.
CALOGERO, Chief Justice[*].
We granted writs in this case, upon Plaintiff-G.I. Joe, Inc.'s application, to determine whether a sublessee of oyster bottoms has a right of action to pursue a claim for damages to its oyster beds even though it has failed to record its interest in the public records. The lessee-sublessor, Mrs. Barbara Jurisich, had recorded, in the conveyance records of Plaquemines Parish, the oyster lease she secured from the State of Louisiana.
GI Joe alleges that, on August 2, 1986, defendant, Chevron U.S.A., Inc., caused damage to the oysters and oyster beds covered by its sublease.[1] Mrs. Jurisich was the owner of public record of the oyster lease on the date of the alleged damage, having obtained her interest from the State on June 8, 1977. GI Joe obtained its sublease on July 14, 1986.[2]
Chevron raised a peremptory exception of no right of action against GI Joe, relying on the provisions of LSA-R.S. 56:423(B) & (E). They allege that the law does not afford any substantive relief for damages to oyster bottoms unless the sublessee has recorded his interest. Following a hearing, the trial court held that GI Joe had a right *64 of action for damages. Chevron sought supervisory writs and the court of appeal reversed, dismissing GI Joe's suit. They found that the sublessee was required to record his interest as required by LSA-R.S. 56:423(B) in order to have a right of action. G.I. Joe, Inc. v. Chevron, No. 89-C-1132 (La.App. 4th Cir., Sept. 6, 1989).
The exception of no right of action tests whether the plaintiff has any interest in judicially enforcing the right asserted. Stevens v. Johnson, 230 La. 101, 87 So.2d 743 (1956); Steadman v. Sladovich, 430 So.2d 816 (La.App. 5th Cir.1983). GI Joe was the owner of the sublease at the time the alleged damages were sustained. Thus, GI Joe is the party with "a real and actual interest" in the litigation, C.C.P. art. 681, and has a right of action for any damages sustained at that time under La. C.C. art. 2315, the general tort provision. Broussard v. Northcott Exploration Co., Inc., 481 So.2d 125 (La.1986).
We must determine, however, whether LSA-R.S. 56:423(B) & (E)'s requirement of recordation affects that right of action, and whether a cause of action for C.C. art. 2315 damages is statutorily barred for failure to record the sublease under these circumstances. [We note the right of this Court to raisesua sponte the exception of no cause of action when neither party presents the issue. La.C.C.P. art. 927; Avegno v. Byrd, 377 So.2d 268 (La.1979); Talley v. Hughes, 481 So.2d 172 (La.App. 4th Cir.1985) ]. Resolution of these questions will involve inquiry into the purpose of recording oyster leases, as provided in LSA-R.S. 56:423(B) & (E), Keelen v. State, Dept. of Culture, Recreation & Tourism, 463 So.2d 1287 (La.1985); State in the Interest of Bruno, 388 So.2d 784 (La.1980), while keeping in mind that the statutes must be strictly construed because in derogation of the general right of an injured party to seek recovery of damages. Keelen v. State, Dept. of Culture, Recreation and Tourism, 463 So.2d 1287 (La.1985).
LSA-R.S. 56:423(B) provides:
A lessee of oyster beds or grounds who has obtained, recorded, and marked his lease in compliance with the law shall have the right to maintain an action for damages against any person, partnership, corporation or other entity causing wrongful or negligent injury or damage to the beds or grounds under lease to such lessee....
This statutory provision explicitly requires a lessee to record a lease in the public records in order to assert a "right" of action. It does not by its terms similarly require a sublessee to record a sublease. The ancillary provision, LSA-R.S. 56:423(E), recites that no "transfer" of a "lease" is "valid" or of any "force or effect whatsoever unless ... registered in the office of the department...." Here, again, there is no mention of a sublease.
The Legislature was surely aware of the general provision that grants a lessee the right to sublease his interest unless "expressly interdicted," La.C.C. art. 2725; and the general provision that the party with "a real and actual interest" is the proper party to bring an action for damages. La.C.C.P. art. 681. Thus, if the Legislature wanted to put limitations on those general rights, they would have done so expressly. City of New Orleans v. Board of Supervisors, 216 La. 116, 43 So.2d 237 (1949); Colwell v. State, Office of Atty. Gen., 506 So.2d 941, 944 (La.App. 1st Cir.), writ denied, 508 So.2d 89 (La.1987).
LSA-R.S. 56:423(B) specifically affords a right to maintain an action in damages to only that lessee who has "obtained, recorded, and marked his lease." Recordation in this context seems to address different concerns from that of the public records doctrine,[3] which is pointedly designed to address claimants' interests in competing titles. The purpose of recordation, in the ordinary case, is to alert third parties of any adverse interests, and to protect them against any unrecorded claims. Motwani v. Fun Centers, Inc., 388 So.2d 1173 (La. App. 4th Cir.1980), Moore v. Shell Oil Co., 228 So.2d 205 (La.App. 3d Cir.1969), writ refused, 255 La. 278, 230 So.2d 587 (1970). *65 McDuffie v. Walker, 125 La. 152, 51 So. 100 (1909), established long ago the necessity of relying on the public records rather than on unrecorded instruments or word of mouth when dealing with title to immovable property. The Legislature has even defined the "third parties" protected by the doctrine in LSA-R.S. 9:2722. Those parties include "purchasers, mortgagees, grantees, vendees, or lessees". Thus, a tortfeasor, such as Chevron, is not among those whose interest the public records doctrine was designed to protect. See Sick v. Bendix-United Geophysical Corp., 341 So.2d 1308 (La.App. 1st Cir.1977). Neither is this a case where Chevron relied on the public records to its detriment while obtaining advance permission from a record owner to conduct potentially damage-causing operations in the vicinity of the oyster reefs.
On the other hand, recordation of oyster leases provides notice to others who may unknowingly interfere with the rights of the oyster lessee or damage his beds if he is unaware that an oyster lease is in existence, and unaware that valuable reefs may be beneath the waters he traverses or invades. Since the oyster beds are submerged, recordation and marking alerts those parties who may be conducting operations in the area covered by the lease, such as mineral lessees and pipeline carriers, that they must proceed cautiously in the vicinity of oyster reefs to avoid damage or destruction. Butler v. Baber, 529 So.2d 374 (La.1988); Doucet v. Texas Co., 205 La. 312, 17 So.2d 340 (1944); Voisin v. Berry Bros., Inc., 387 So.2d 633 (La.App. 1st Cir. 1980).
Once the oyster lease is recorded and marked, however, it is irrelevant that the oyster reefs may be under the control of a sublessee whose interest is unrecorded. Third parties are on notice that an oyster lease is in existence, and should be aware that they are likely to damage valuable reefs belonging to someone, should they carelessly conduct operations in the area. Butler, supra; Doucet, supra; Voisin, supra. Thus, where a lease is recorded and marked, it is not necessary to require an oyster sublessee to record his interest. Parties operating in the area are already notified to take care not to disturb oyster beds which are under lease. Therefore, where damages, rather than contests' over title, are involved, recordation is only relevant to show that a tortfeasor was alerted to the existence of the oyster lease and possible on-going cultivation.
Of course, recordation will also identify the person who may suffer damages from intrusion, and prevent a defendant's paying the wrong claimant (if the statute were to require a sublessee to record in order to assert a right of action). But, if the purpose of LSA-R.S. 56:423 were to protect a tortfeasor from double payment where a sublease is unrecorded, the Legislature would have expressly included subleases within the provisions of LSA-R.S. 56:423. Absent language to the contrary, we cannot assume that the Legislature intended to protect tortfeasors in this manner. Courts must construe a statute so as only to give it the purpose intended by the Legislature and none other. State in the Interest of Bruno, 388 So.2d 784 (La.1980).[4]
Nor do we find that LSA-R.S. 56:423(E) prevents this sublessee from asserting a right of action. As stated above, any provision that attempts to derogate a common right of a party must be strictly construed. Keelen, supra. We find that the "transfer" required to be recorded in the department's records is also limited to transfers of the lease, as is explicitly stated in that subsection.[5] If the Legislature intended *66 to require that sublessees record their interests, absent which they should be denied any right or cause of action to assert a claim for damages to the beds or grounds, the Legislature could easily have so provided in this subsection (§ 423(E)), and in § 423(B).
Surely it is more prudent for a sublessee to record his interest, for there are circumstances, such as in the case of competing interests, where his title might be defeated by prior recordation of a subsequently obtained sublease. Dispute concerning prior rights, however, is not involved in a case of this sort where damages are caused by negligence.
Our treatment of the legal issue before us of necessity requires consideration of the cause of action as well as the right of action of an oyster sublessee to bring suit for damages. Both exceptions are pertinent in the discussion of the oyster statutes and their purpose. Yet, the lower courts' judgments responded only to the exception of no right of action, which the court of appeal found meritorious. It is nonetheless appropriate, if only in the interest of judicial economy,[6] that we decide in this opinion whether GI Joe has stated a cause of action, particularly inasmuch as appellate courts are at liberty to raise the exception on their own motion. For appropriate disposition of this case at this juncture, we should and do hold that the involved statutes do not limit this oyster sublessee's art. 2315 cause of action. The plaintiff-sublessee has alleged sufficient facts to state a cause of action under La. C.C. art. 2315 by alleging that defendant's negligent conduct caused it damage.

DECREE
For the foregoing reasons, the judgment of the court of appeal is reversed, the exception of no right of action is overruled, and the trial court's judgment overruling defendant's exception of no right of action, is reinstated. The matter is remanded to the district court for further proceedings.
REVERSED AND REMANDED TO THE DISTRICT COURT.
NOTES
[*] Judge Melvin A. Shortess of the 1st Circuit Court of Appeal participated in this decision as Associate Justice Pro Tempore in place of Chief Justice John A. Dixon, Jr., who retired on April 8, 1990.
[1] Also involved in this litigation is an independent oyster lease, lease no. 26911, also allegedly damaged by Chevron on August 2, 1986 and owned by Mitchell Jurisich. This is the reason the title of the suit names two plaintiffs. That oyster lease owned by Mitchell Jurisich, however, is not affected in any way by the limited matter before us at this juncture of the case.
[2] The chain of title for the particular lease in question, oyster lease no. 24265, is as follows: The State of Louisiana granted the lease to Barbara B. Jurisich on June 8, 1977; Mitchell B. Jurisich, Sr. as Agent for Barbara Jurisich granted a sublease including lease no. 24265 to G.I. Joe, Inc. on July 14, 1986; Barbara B. Jurisich to Mitchell Jurisich, Sr. by Partition of Community and Compromise on January 14, 1987; Mitchell Jurisich, Sr. conveyed the lease to Shell Island, Inc. on January 15, 1987. All of these transactions were recorded in the conveyance records of Plaquemines Parish except for the sublease to GI Joe. GI Joe claims that the sublease was not primed by the subsequently recorded leases to Mitchell Jurisich and to Shell Island because both of those parties took their respective interests with full knowledge of GI Joe's sublease, and have acknowledged their rights are inferior to his. Whether that is so ornot is immaterial to this opinion because it is claimed the damages to GI Joe were sustained before those two transfers.
[3] LSA-R.S. 9:2721, et seq.
[4] While this matter of tortfeasor protection from double payment is not persuasive as an argument regarding the appropriate statutory construction, it is worth noting that the tortfeasor's "protection" from simultaneous claims of a sublessor and a sublessee in a case such as this one is served by the fact that at trial, the sublessee must prove the existence of a sublease from the sublessor and that he (not another party) had proprietary rights in the oyster beds at the time damages were sustained.
[5] R.S. 56:423(E) provides: "All leases made in conformity with the provisions of this Subpart are heritable and transferable.... No such inheritance or transfer is valid or of any force or effect whatsoever unless evidenced by an authentic act, judgment, or proper judicial deed registered in the office of the department in a book provided for that purpose...." (Emphasis provided.)
[6] The alternative to the judicially economic resolution of dealing with the issue of a cause of action would be for us to simply find that the court of appeal's judgment maintaining defendant's exception of no right of action was erroneous for the reasons stated in the opinion, while pretermitting the issue of whether GI Joe's claim states a cause of action. Such would needlessly delay a final resolution of this phase of the litigation.