816 P.2d 485

**CHRISTOPHER P., Petitioner,**

v.

**STATE of New Mexico, Respondent.**

**No. 19375.**

Supreme Court of New Mexico.

Aug. 14, 1991.

Billy R. Blackburn, Albuquerque, for petitioner.

Jacquelyn Robins, Chief Public Defender, Hollis Whitson, Appellate Defender, Santa Fe, for amicus curiae.

Tom Udall, Atty. Gen., Katherine Zinn, Asst. Atty. Gen., Santa Fe, for respondent.

## OPINION

FRANCHINI, Justice.

This children's court case comes before us on a grant of certiorari. Petitioner Christopher P. was charged in the children's court division of the district court with two counts of first degree murder and conspiracy to commit first degree murder. At the same time the petition alleging delinquency was filed, the children's court attorney filed a motion to transfer the matter to the adult division of district court pursuant to NMSA 1978, Section 32–1–30 (Repl.Pamp.1989).

The transfer proceedings were bifurcated. During the initial stage of the proceedings, the children's court judge determined there were reasonable grounds to believe the child committed the delinquent acts. *See* § 32–1–30, A(5). The subsequent stage of the proceedings addressed whether the child was "amenable to treatment or rehabilitation as a child through available facilities." § 32–1–30, A(4). Prior to the amenability portion of the transfer proceedings, the children's court judge ordered that Christopher submit to a psychological evaluation to aid the court in its amenability determination. Over objection of the child's counsel, the court ordered the child to discuss the alleged delinquent acts with the psychologist conducting the evaluation. The court also ordered that any information about the alleged incident discussed during the examination could be used only for the amenability portion of the transfer hearing and for no other purpose.

The child's counsel and the children's court attorneys viewed the evaluation through a one-way mirror. During the evaluation, Christopher described his activities before and during the alleged offenses and the feelings he experienced. The record below reflects that the psychologist's testimony during the amenability proceedings included specific references to the child's statements and that, at least in part, the psychologist relied on the child's statements in reaching his conclusion that Christopher was not amenable to treatment as a child.

The children's court granted the transfer motion. The child appealed on several grounds, including a claim that his fifth amendment privilege against self-incrimination guaranteed by the United States Constitution was violated when the children's court ordered him to discuss the alleged crimes during the psychological evaluation. The court of appeals affirmed the transfer order. 111 N.M. 80, 801 P.2d 662. We now reverse the court of appeals. We consider the question of whether the child's fifth amendment privilege against self-incrimination was violated when the child was compelled to discuss the charges against him during a court ordered psychological examination to be used in determining his amenability to treatment.

The child does not contest the authority of the children's court to order him to submit to a psychological evaluation for the purpose of aiding the court in its determination of the question of amenability. *See State v. Doe,* 97 N.M. 598, 642 P.2d 201 (Ct.App.) (children's court may appoint experts for mental examination of child under evidence rule governing court-appointed experts), *cert. denied,* 98 N.M. 50, 644 P.2d 1039 (1982). However, the child challenges the court's order that he discuss the specifics of the alleged criminal behavior as compelling him to testify against himself in violation of the fifth amendment.

The state argues the transfer proceedings are nonadversarial, determine only the forum in which the child will be tried, and that no penalty or determination of guilt attaches as a result of the proceedings. *See State v. Doe,* 103 N.M. 233, 704 P.2d 1109 (Ct.App.) (transfer proceedings only decide where the child will be tried), *cert. denied,* 103 N.M. 177, 704 P.2d 431 (1985). Consequently, the state contends the fifth amendment is not applicable to transfer proceedings and that any potential subsequent violation of the fifth amendment is remedied by the court's order limiting the use of the child's statements to those proceedings only.

The characterization of the transfer proceedings by the state and the court of appeals diminishes the impact of the proceedings on the child. Among the pur-

poses articulated in our Children's Code, NMSA 1978, §§ 32–1–1 to –59 (Repl.Pamp. 1989) is the legislative desire "to remove from children committing delinquent acts the adult consequences of criminal behavior." § 32–1–2(B). The emphasis of the Code is to "provide appropriate and distinct dispositional options for treatment and rehabilitation" of children. § 32–1–2(D). We also note that a designated purpose of the Code is "to provide judicial and other procedures * * * in which the parties are assured a fair hearing and their constitutional and other legal rights are recognized and enforced." § 32–1–2(E). Additionally, children are "entitled to the same basic rights as an adult, except as otherwise provided in the Children's Code." § 32–1–27(A).

Transfer proceedings exempt the child from the conceptual framework and protections the Children's Code envisions and expose the child to adult criminal liability.

[T]he waiver [transfer] decision does more than determine a judicial forum for an accused youth. It invokes a jurisprudential philosophy that governs the nature of the proceedings as well as the purpose and severity of the sanctions. It also raises the important issues of when a child is no longer a child and what factors, other than age, are relevant for removing some youths from juvenile court jurisdiction.

Forst & Blomquist, *Cracking Down on Juveniles: The Changing Ideology of Youth Corrections*, 5 Notre Dame J.L., Eth. & Pub. Pol'y 323, 339 (1991); *see also Kemplen v. Maryland*, 428 F.2d 169 (4th Cir.1970) (nothing is more critical to the accused than whether the accused will be tried as an adult; waiver proceedings can result in dire consequences for the accused).

In a landmark decision regarding the administration of juvenile justice, the United States Supreme Court held that the determination of whether to transfer a child to adult court was a "critically important" proceeding. *Kent v. United States*, 383 U.S. 541, 560, 86 S.Ct. 1045, 1056–57, 16 L.Ed.2d 84 (1966). The Court recognized "there is no place in our system of law for reaching a result of such tremendous consequences without ceremony—without hearing, without effective assistance of counsel * * *." *Id.* at 554, 86 S.Ct. at 1053. Although *Kent* was decided on statutory rather than constitutional grounds, the Court deemed transfer proceedings "must measure up to the essentials of due process and fair treatment." *Id.* at 562, 86 S.Ct. at 1057.

In the wake of *Kent*, the Supreme Court held the fifth amendment privilege against self-incrimination applicable to adjudicatory proceedings in juvenile cases. *In re Gault*, 387 U.S. 1, 55, 87 S.Ct. 1428, 1458, 18 L.Ed.2d 527 (1967). Considering the consequences that evolve from transfer, the distinction between adjudicatory and transfer proceedings blurs in the context of the fifth amendment. In *Gault*, the Court determined that "the availability of the privilege does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites." *Id.* at 49, 87 S.Ct. at 1455. In this case, not only was the child compelled to make inculpatory statements for purposes of the transfer proceedings, his exposure was maximized by the presence of the prosecution during the psychologist's examination.

The fifth amendment "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where his answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973). While the court's order here barred use of the inculpatory statements in further proceedings, it is difficult to imagine how the prosecution could have failed to gain new insights and information from the child's statements.

In our review of cases from other jurisdictions, we find that a majority of states have upheld the authority of children's courts to order psychological evaluations for consideration in transfer or waiver proceedings. Most states have recognized this authority in the context of state statutory provisions. However, we find no prece-

dents sanctioning a court order compelling a child to make inculpatory statements in the presence of the prosecution for any purpose.

In *Lippold v. State*, 365 So.2d 1015 (Ala. Crim.App.1978), *writ denied*, 365 So.2d 1022 (1979), the use of a child's inculpatory statements in transfer proceedings was not considered error where a psychologist had informed the child his statements could be used against him in the proceedings. Although it was not clear the child understood his rights, there was no indication that any of the child's statements were compelled.

The Arizona Court of Appeals held a psychological evaluation was inadmissible in transfer proceedings, where appropriate limitations were not placed on use of the child's statements. Had appropriate use limitations been in place, refusal to cooperate could be used as evidence of nonamenability. Compelled inculpatory statements were not at issue, and the court recognized the child's right to remain silent. *Matter of Appeal in Pima County, Juvenile Action No. J-77027-1*, 139 Ariz. 446, 679 P.2d 92 (Ct.App.1984).

In *State in Interest of Bruno*, 388 So.2d 784 (La.1980), the trial court's authority to order a psychological evaluation was upheld against a fifth amendment challenge. While the court held both inculpatory and exculpatory statements were admissible for purposes of the transfer proceedings, there is no indication the court considered whether the child could be compelled to make inculpatory statements during the examination.

*Commonwealth v. Dotson*, 286 Pa.Super. 595, 429 A.2d 682 (1981), was decided under a state statute imposing an affirmative duty on the juvenile court to find there were reasonable grounds to believe the child was not committable to an institution for the mentally ill or mentally retarded. The reviewing court held the child could be ordered to cooperate with the examining psychiatrist, and if cooperation was withheld, the child would waive the right to challenge the court's decision regarding whether he was committable. The court stressed its decision did not deny the child's right to counsel or to have counsel present

at the examination, and additionally permitted the child to remain silent.

To our knowledge, only one jurisdiction has determined that under any circumstances, a court ordered psychological evaluation for use in determining amenability violates a child's fifth amendment privilege against self-incrimination. *R.H. v. State*, 777 P.2d 204 (Alaska Ct.App.1989). The court reaches its conclusion despite elaborate precautions taken by the trial court to produce a sanitized report. *Id.* at 207. The Alaska court's analysis relies heavily on *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). In *Estelle*, the respondent underwent a court ordered psychological evaluation for use in determining his competence to stand trial and was not informed of his right to remain silent. The state later called the psychiatrist who conducted the evaluation to testify during the penalty phase of Smith's capital murder proceedings. The Court held admission of the psychologist's testimony violated Smith's fifth amendment privilege, finding no distinction between the guilt and penalty phases of the proceedings for purposes of the protection provided by the fifth amendment. *Id.* at 462–63, 101 S.Ct. at 1872–73.

Our court of appeals considered *Estelle* in deciding a fifth amendment challenge to admission of a psychologist's testimony in transfer proceedings following a court ordered evaluation. *State v. Doe*, 97 N.M. 263, 639 P.2d 72 (Ct.App.1981), *cert. denied*, 98 N.M. 50, 644 P.2d 1039, *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982). The court distinguished *Estelle*, finding no self-incriminating statements in the record before it. *Id.* at 265–66, 639 P.2d at 74–75. No such distinction exists in this case. The record before us is replete with inculpatory statements elicited from the child.

■ Having considered the nature and implications of juvenile transfer proceedings, we adopt the position that these proceedings are a critical stage in a child's involvement with the juvenile justice system. The provisions of the Children's Code cited herein, read in the light of *Kent*, *Gault*, and *Estelle*, compel our holding that

**420**

the fifth amendment privilege against self-incrimination extends to transfer proceedings initiated pursuant to Section 32–1–30. We do not suggest the privilege excludes a court ordered evaluation properly limited in scope. We do conclude the child's fifth amendment rights were violated in the proceedings below by the court's order compelling him to discuss the alleged offenses with the psychologist without the advice of counsel.

Accordingly, we reverse the court of appeals and remand this matter for further proceedings consistent with this opinion. We also instruct the children's court to consider whether it is appropriate for the children's court attorneys who participated in the transfer proceedings to continue in the prosecution of this matter, given their knowledge of the compelled statements.

IT IS SO ORDERED.

RANSOM and MONTGOMERY, JJ., concur.