Plaintiffs, Julius Jamerson and William H. Brown, in this action seek to have set aside and annulled certain mineral conveyances affecting land in which they are interested and to recover royalties paid to other persons as a result of those transfers.
Jamerson, on February 12, 1937, executed an instrument in favor of "Milton E. Johns, attorney at law," wherein the following was stipulated:
"That the said Julius Jamerson (Jamison) has contracted with the said Milton E. Johns to have all the fraudulent titles and claims cancelled or removed from the records of Bossier Parish, Louisiana, and affecting his hereinafter described lands situated in Bossier Parish, Louisiana.
"That in consideration of services rendered by the said Milton E. Johns, which services the said vendor and contractor acknowledge to be a sufficient and adequate consideration, he does by these presents, grant, bargain, sell, convey and deliver with full guarantee of title and with complete transfer and subrogation of all rights of actions of warranty against all former proprietors of the property herein conveyed unto Milton E. Johns, husband of Edna Bezanson Johns, and assigns, the following described property, to-wit: One-fourth (1/4) of the oil, gas and other minerals in and under and that may be produced from the following lands situated in Bossier Parish, Louisiana; East one-half of the Southeast one-quarter of Section 24, Township 17 North, Range 12 West."
Jamerson's rights in said described tract had been acquired many years previously *Page 715 
through inheritance from his father and mother, the portion inherited being an undivided one-sixth interest.
When the above described Johns agreement was signed the 80 acres was burdened with an oil and gas lease, held by the Union Producing Company, that had been granted by all of the co-owners; and Jamerson then owned only a one twenty-fourth interest in the minerals, he having previously sold to others a total of three twenty-fourths of an original one-sixth mineral interest.
On May 21, 1937, Johns executed a mineral deed reciting that for a paid cash consideration of $275 he sold, conveyed and delivered unto C.A. Mayfield, with full guaranty of title, one twenty-fourth of the oil, gas and other minerals in and under the 80 acre tract of land.
Mayfield, on November 26, 1938, by a similar instrument, conveyed the same interest to T.W. Johnson for $307.50 cash.
On September 19, 1939, Milton E. Johns quitclaimed unto Julius Jamerson all of his right, title and interest in the oil, gas and other minerals in and under the 80-acre tract, declaring in the instrument that "he has filed no suit or performed any act in the carrying out the purpose of said sale and transfer" made to him by Jamerson on February 12, 1937.
In the meantime, during the month of September, 1938, Jamerson transferred to William H. Brown and N.N. Brady an undivided two-thirds interest of an undivided one-sixth interest in the described land. Later, N.N. Brady conveyed her part to William H. Brown. In neither of the deeds evidencing these transactions were the minerals mentioned.
It is the contention of plaintiffs, Jamerson and Brown, that the transfer of minerals from Jamerson to Johns on February 12, 1937, was without consideration; that such transfer, together with the subsequent conveyances to Mayfield and to Johnson, is null, void and of no effect and should be cancelled; and that they are entitled to receive the royalties paid by the Union Producing Company to Mayfield and Johnson.
Made defendants are the Union Producing Company and Johnson who urge primarily that Johnson was a bona fide purchaser for value.
Through appropriate pleadings and for the purpose of protecting themselves against plaintiffs' demands, the defendants impleaded Mayfield and Johns as parties litigant.
The trial judge, in concluding his written opinion respecting the merits of the case, decreed:
"For these reasons there will be judgment in favor of plaintiffs ordering the cancellation of the instrument whereby Milton E. Johns claimed to acquire 1/4 of the minerals on the 80 acres of land above described, and the deed from Johns to C.A. Mayfield and from Mayfield to T.W. Johnson, and for all costs of this suit. There will be further judgment against C.A. Mayfield and in favor of T.W. Johnson on the call in warranty for $307.50. There will be further judgment in favor of C.A. Mayfield and against Milton E. Johns the call in warranty for $200.00. There will be further judgment in favor of plaintiffs and against Union Producing Company for $142.15 and in favor of Union Producing Company on its call in warranty against C.A. Mayfield for $16.44 with legal interest from December 1, 1938, and against T.W. Johnson for $125.71 with legal interest from June 1, 1941. C.A. Mayfield, T.W. Johnson and Milton E. Johns should be cast for all costs."
A formal judgment in keeping with that decree was signed.
Johnson, Mayfield and the Union Producing Company are prosecuting this appeal.
The following pronouncements of the law found in Cole et al. v. Richmond et al., 156 La. 262, 100 So. 419, 423, are, we think, applicable to this controversy:
"The conveyance records are the only thing to which one dealing with real estate needs to look, under the repeated decisions of this court, nor can innocent third persons purchasing upon the faith of the public records be bound by any knowledge except such as is disclosed by such records. Baird v. Atlas Oil Co., 146 La. [1091], 1099, 84 So. 366; McDuffie v. Walker, 125 La. [152], 167, 51 So. 100; Waller v. Colvin, 151 La. [765], 772, 773, 92 So. 328.
"Neither fraud, nor want of consideration, nor secret equities between the parties, who have placed on the public records a title valid upon its face, can be urged against a bona fide purchaser for value, who has acted on the faith of such recorded title. Broussard v. Broussard, 45 La.Ann. 1085, 13 So. 699; Fletcher v. Peck, 6 Cranch, 87, 3 L.Ed. 162; Succession of *Page 716 
Guillory, 29 La.Ann. 495; Chaffe v. Ludeling, 34 La.Ann. [962], 967."
The quoted doctrine was followed and applied in the later cases of Schwing Lumber Shingle Co., Ltd., et al. v. Arkansas Natural Gas Company et al., 166 La. 201, 116 So. 851; Harris et al. v. United Gas Public Service Company, 181 La. 983, 160 So. 785; and Strange v. Robinson, La.App., 189 So. 338.
It is also the law that all persons have constructive notice of the existence and contents of a recorded instrument affecting immovable property (United Gas Public Service Company v. Roy et al., La.App., 147 So. 705); and where such an instrument contains language that fairly puts a purchaser on inquiry as to the title and he does not avail himself of the means and facilities at hand to obtain knowledge of the true facts he is to be considered as having bought at his own risk and peril. Breaux-Renoudet Cypress-Lumber Company v. Shadel et al., 52 La.Ann. 2094, 28 So. 292.
Furthermore, as a condition precedent to good faith, a purchaser is not required to examine the public records for the purpose of determining whether or not the property's title is good and valid. Dinwiddie v. Cox et al., La.App., 9 So.2d 68. Bad faith is not to be imputed to him merely because an examination of the public records would have disclosed a defect in his vendor's title. Delouche v. Rosenthal, 143 La. 581, 78 So. 970.
Reverting now to the facts of this case, it is to be noticed that defendant Johnson paid a valuable consideration for the one twenty-fourth interest in the minerals that he bought from Mayfield. The amount expended was $307.50. He did not know Mayfield previous to the purchase; neither was he acquainted with Johns. It is true that he failed to make or cause to be made an examination of the property's title; but he is not chargeable with bad faith, as above shown, merely because of that omission. However, Johnson had constructive knowledge of the act of conveyance, including its contents, executed by Jamerson in favor of Milton E. Johns because it was duly recorded.
Now if that instrument is valid on its face, plaintiffs' charge of want of consideration for the transfer cannot be urged against Johnson, a bona fide purchaser for value. On the other hand, a different conclusion must be reached should it be determined that the language thereof was sufficient to cause Johnson to make inquiry concerning the true facts surrounding the transaction.
The instrument recited that it was an agreement entered into between Jamerson and Johns, an attorney at law; that Julius Jamerson "has contracted with the said Milton E. Johns to have all the fraudulent titles and claims cancelled or removed from the records of Bossier Parish, Louisiana, and affecting his hereinafter described lands"; and "that in consideration of services rendered by the said Milton E. Johns, which services the said vendor and contractor acknowledge to be a sufficient and adequate consideration, he does by these presents, grant, bargain, sell, convey and deliver with full guarantee of title * * *". The property described as being conveyed to Johns was one-fourth of the minerals.
At the time of the confection of that conveyance act, there were standing on the records of Bossier Parish, Louisiana, several instruments previously executed by Jamerson and affecting the minerals under the land in question. Johnson could have justly and rightly concluded, if he had examined the property's title, that these were deemed fraudulent by Jamerson and were the claims contemplated being removed and cancelled through the efforts of Johns, the described attorney at law.
Furthermore, Johnson was entitled to assume that a valid consideration supported the conveyance. Even had the act recited none, that omission alone would not have rendered it void. "An agreement is not the less valid, though the cause be not expressed." R.C.C. Article 1894. See, also, Read v. Hewitt et al., 120 La. 288, 45 So. 143; Barnes et al. v. Barnes et al.,155 La. 981, 99 So. 719. But a real consideration was recited. It was "services rendered" by the vendee, an attorney at law; and such, under our jurisprudence, is sufficient to sustain a transfer of immovables. McClung et al. v. Atlas Oil Company, 148 La. 674, 87 So. 515.
Inadequate, we think, to place Johnson on inquiry as to the title is the fact that the instrument provided for the transfer of one-fourth of the minerals whereas Jamerson's interest was only a one twenty-fourth. Johnson was purchasing a one twenty-fourth interest, and had he examined *Page 717 
the title he would have found that the conveyances from Jamerson to Johns and from Johns to Mayfield involved at least that interest.
Consequently, it is our opinion that the conveyance act executed by Jamerson to Johns was valid on its face, and neither lack of consideration for it nor equities that existed between those parties can be urged against Johnson, who was a bona fide purchaser for value.
Incidentally, a strong circumstance in favor of Johnson's good faith is the fact the conveyance act had been on the public records for almost two years when he acquired his interest.
The quitclaim deed from Johns to Jamerson in September of 1939 is ineffective as against Johnson in as much as its execution occurred subsequent to the latter's acquisition.
For the reasons above assigned, the judgment appealed from is reversed and set aside, and there is now judgment dismissing the suit of plaintiffs and rejecting their demands. Costs of both courts shall be paid by plaintiffs.