JANVIER, Judge.
In the Civil District Court for the Parish of Orleans, Modern Finance Company obtained a final judgment for $412, with interest and attorney’s fees, against Sterling N. Harris. This judgment was rendered on March 10, 1947, was signed on March 14, 1947, and was recorded in the office of the Recorder of Mortgages for the Parish of Orleans on March 24, 1947, in Book 1602, at folio 534. This is an attempt by the Modern Finance Company, by hypothe-cary action, to execute that judgment by the seizure and sale of certain real estate in the Parish of Orleans, standing on the records in the office of the Register of Conveyances for the Parish of Orleans in the name of Homer D. Montgomery.
The property is described as follows:
“That portion of ground, together with all the buildings and improvements thereon and all the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in any wise appertaining, situated in the First District of New Orleans, in square No. 719, bounded by Palmetto, Euphrosine, South Genois and Telemachus Streets and Washington Avenue, designated by the No. Eighteen (18) on plot of survey by F. C. Gandolfo, Surveyor, dated April 29, 1940, and revised Augusr 5, 1940 and redated August 20, 1941, annexed to an act passed before Gus Levy, Notary Public, on March 29, 1943 according to which, said lot measures fifty feet, one inch (50' 1'') front on Washington Ave., forty-one feet, four inches, five lines (41' 4'' 5' ") in width on the rear line, by a depth and front on Telemachus Street of eighty-three feet, five inches, one line (83' 5" 1' ") and a depth on the line of lot Nineteen (19) on said plan of one hundred eleven feet, seven inches and three lines (111' 7" 3'") and forms the corner of Washington and Telemachus Street. The improvements thereon bear the Municipal No. 4827 Washington Avenue.
“The said property was acquired by Mrs. Constance Deboisblanc, wife of Sterling Harris and Sterling Harris, from the Fidelity Homestead Association under act of sale dated November 10, 1943, passed before Allain C. Andry, Jr., Notary Public, registered in Conveyance Office, Parish of Orleans, in Book 528, folio 195.”
Homer D. Montgomery became the owner of the said property on April 22, 1947— twenty-nine days after the recordation of the above mentioned judgment — by act before John R. Legier, notary public, by purchase from Union Savings and Loan Association, which association had, on that same day, acquired it from" Mrs. Constance deBoisblanc, wife of Sterling Harris, and Sterling Harris. (Note the absence of a middle initial.)
In due course, Modern Finance Company, through its attorney, called on Homer D. Montgomery in writing to surrender the property for execution of the judgment. This Montgomery failed and refused to do. .
This proceeding was then instituted against Homer D. Montgomery, plaintiff, praying that defendant be condemned to deliver and relinquish the said property in order that it might be sold by the Civil Sheriff in satisfaction of the said judgment. Montgomery filed exceptions of no cause ^and no right of action, which were overruled. He then answered, for lack of information, denying all of the essential allegations of plaintiff’s petition and averring1 that he had purchased the property through the aforementioned homestead association from Mr. and Mrs. Sterling Harris and that Sterling N. Harris had never, at any time, been the record owner of the property.
Montgomery denied the right of plaintiff, in the execution of a judgment against Sterling N. Harris, to seize property which, at one time, stood in the name of Sterling Harris. Montgomery then called in warranty Union Savings & Loan Association from which -he bad purchased the property, Wilbur Nickson, doing business as *679 Louisiana Realty Company, the real estate agent through whom he had purchased the property and W. P. Hickey, then the Recorder of Mortgages for the Parish of Orleans.
The call in warranty against the Homestead Association was based on the allegation that in purchasing the property, Montgomery had paid to that association a fee for title examination and that, therefore, the association would be liable to him should he be evicted.
The call in warranty against Nickson is based on the allegation that he, as real estate agent, negotiated the purchase of the property by Montgomery. The call in warranty against Hickey, the then Recorder of Mortgages, is based on the allegation that from the office of the Recorder of Mortgages there had been issued a mortgage certificate which did not disclose the recordation of any such judgment.
All three defendants in warranty filed exceptions of no right of action and no cause of action. So far as we can ascertain from the record these exceptions were never set down for trial, unless it be that they were tried -when the main controversy was submitted on the merits.
After many delays and before the matter came to trial, Homer D. Montgomery died and his widow, Mrs. Iris Antoine Montgomery, qualified as natural tutrix of their minor child, Thomas Eugene Montgomery, and she, in her individual capacity, and as natural tutrix of the minor, was made party defendant.
After a trial in the Civil District Court, there was judgment in favor of plaintiff and against Mrs. Iris Antoine Montgomery, individually and as tutrix of the minor, Thomas Eugene Montgomery, and the Succession of Homer D. Montgomery, condemning the defendants to deliver and relinquish the property' in order that it be sold in execution of the judgment against Sterling N. Harris. The judgment further dismissed the three calls in warranty as of nonsuit. Defendants have appealed.
The defendants in warranty did not answer the appeal nor did they take independent appeals praying that the judgment be amended and that it be made a definitive judgment of absoluté dismissal .of the calls in warranty. '
The Homestead Association and Nick-son, through their counsel, appeared before us and in brief and in oral argument contended that the judgment should be amended in their favor and that they should be finally and definitively dismissed as defendants in warranty. The former Recorder of Mortgages, through his attorney, appeared before us and in brief and stated that the said Recorder is probably no longer a party since he is not now the Recorder of Mortgages, and his attorney further stated that if the former Recorder is still a party, the judgment of nonsuit in his favor should be affirmed.
Counsel for the plaintiff in the main demand contend that the question presented is “moot” because the defendants produced no evidence whatever. We think that there is presented by the record which is before us the issue which, is raised by the answer, i. e., whether the recordation of a judgment against Sterling N. Harris affects property standing in the name of Sterling Harris.
Although on behalf of the defendants, no evidence was offered, the authentic acts, copies of which are before us, show that at the time the judgment was recorded, the property stood in the name of Mr. and Mrs. Sterling Harris — no middle initial appearing — and plaintiff itself has shown that the judgment which it is attempting to execute runs 1 against Sterling N. Harris, there being a middle initial shown in that judgment.
The record shows beyond any doubt— in fact there is no contention to the contrary — that the Sterling N. Harris, against whom the judgment was rendered and the Sterling Harris, who at one time, with his wife, was the owner of the property,. are one and the same person.
When we come to consider the question of whether the presence of the middle initial in the one case, and the absence of it in the other, has any significance, our attention is directed ■ to Article 2259 of the Civil Code which provides -that when an act of transfer is passed in the-Parish of Orleans, the registration thereof shall show, *680 among other things, “the names, surnames and qualities of the contracting parties.”
Counsel for plaintiff maintain that since both the word “names”- and the word “surnames” appear in the plural this act means that where there is more than one name or more than one surname, all must be given and that, therefore, it is essential that the middle name be set forth.
We have given some thought to this suggestion, but" conclude that no special significance should be given to the fact that those words appear in the Article in the plural, for the reason that the word “parties” is also in the plural. In other words, the act requires that the names of all parties and the surnames of all parties shall be given. If the act provided that the names of each party and the surnames of each party should be set forth, then there might be some significance and it might be said that it was intended that if a party had more than one name or more than one surname, all must be given.
We find it to be well settled in practically all jurisdictions that only one Christian or first name is recognized in law and that the middle initial is of importance only where there is necessity to distinguish between two persons who have the same Christian or first name and the same family or surname.
In Bouvier’s Law Dictionary, Rawles Third Revision, under the word “Name,” appears the following: “One Christian name only is recognized in law.”
Bouvier also states: “An initial is no part of a name.”
From Black’s Law Dictionary, Deluxe Edition, we learn: “In law a man cannot have more than one Christian name.”
In Coral Gables v. Kerl, 334 Pa. 441, 6 A.2d ,275, 122 A.L.R. page 909, we find the following: “Under the early common law, it was the rule that the law knows but one given or Christian name and one surname, and does not recognize a middle name or initial; hence a mistake in, or omission of, the middle name of a person, in an indictment, or in pleadings or in process in a civil action, is immaterial. See 19 R.C.L. p. 1328, sec. 4. Also First Nat. Bank of Opp. v. Hacoda Mercantile Co., 1910, 169 Ala. 476, 53 So. 802, 32 L.R.A.,N.S., 243, Ann.Cas.1912B, 599; Fincher v. Hanegan, 1894, 59 Ark. 151, 26 S.W. 821, 24 L.R.A. 543; Dutton v. Simmons, 1876, 65 Me. 583, 20 Am.Rep. 729; Davis v. Steeps, 1894, 87 Wis. 472, 58 N.W. 769, 23 L.R.A. 818, 41 Am.St.Rep. 51.”
It is shown, however, that this rule has sometimes been departed from where there is a mistake in the middle initial and that where the incorrect middle initial is given, possibly it might be held that, as a result of the confusion, the recordation of a judgment against a person giving the incorrect middle initial, might not -be effective against property standing in a similar name but with a different middle initial. However, even in such case, we are of the opinion that the similarity would place upon the purchaser of property the duty of making certain that the two names did not represent the same person.
As to the presence or absence of a middle initial, note the following from American Jurisprudence, Verbo Judgment, Vol. 30, Section 92, p. 865: “ * * * In regard to the middle initial; some authorities hold that if a middle initial is used, it must be the proper one, especially where there are other persons in the district who have a similar name. Other cases, however, maintain that an error in the middle initial of the defendant in the entry and docket of the judgment recovered against him does not render it invalid.”
Also from the American Jurisprudence, Verbo Name, Vol. 38, section 5, p. 597 we again quote: “Some courts have held that while a middle name cannot be disregarded, a middle initial may be, and other courts, while deeming the entire omission of a middle name or initial to be immaterial, take the position that a mistake in the middle name or initial is a variance, especially in the case of a service by publication. Still other courts -hold that a mistake in the middle initial is fatal where a person is designated only by initials.”
We find the question of “names” discussed in 45 Corpus Juris, section 67, page 369, from which we quote as follows:
*681 “It is the well settled rule in most jurisdictions, growing out of the custom observed in ancient times of having only one given name, that the law recognizes but one, although for purposes of identification a middle name may be very important; and so it has been repeatedly held that the insertion or omission of, or mistake or variance in, a middle name or initial, even in criminal cases, is immateral; and such name or initial may be dropped and resumed or changed at pleasure. If one is sued or prosecuted by his middle name, omitting his first name, the declaration or indictment is defective, and a judgment rendered thereon will be set aside, unless it be proved that he was also known by the name stated. Similarly, an indictment is defective which places another name before the Christian name, making the latter appear as a second or middle name.”
“There is a tendency, however, to give greater regard to the middle name or initial, especially to avoid unjust or absurd results, inasmuch as the rule has lost much of the reason upon which it was originally based, and in a few jurisdictions the middle name or initial is held to be a material part of the name, in civil as well as criminal actions, except in civil actions where the person is otherwise identified. In accord with this view, it has been said that the habitual and common use by a person of his middle or second name may not be ignored; and that the given name may not be one word only, but two or more, one of which may be as important as the other.”
A search of the jurisprudence of this State has brought to light very little on the subject. We ourselves, however, in Tran-china v. Williams, 10 La.App. 656, 120 So. 882, considered the question of whether the inscription of a mortgage in the name of John E. Tranchina should 'have been reported on a certificate applied for in the name of John Tranchina. The Recorder of Mortgages failed to show the recordation of the inscription against John E. Tranchina and we, in effect, held that the Recorder of Mortgages had been at fault in not reporting the inscription against John E. Transchma, but we did not hold?him liable for the reason that before the’ certificate was obtained, which failed to* show the inscription, the property had already been bought and the purchase price had already been paid.
Counsel for defendant-appellant cite several cases which, it is contended, establish the rule that if there is the slightest difference in names, the recordation against one will have no effect against the other. But in no one of these cases was there presented the question of the absence or presence of a middle initial. In each of the cases the difference in names was so great that in no one of them could it be said.that there was any similarity at all.
For instance, in Charrier v. Greenlaw Truck & Tractor Co., 2 La.App. 622 the re-cordation of the chattel mortgage, through error, indicated that the notary was the mortgagor. In other words, the name, of the notary, McEnerny, was recorded as the mortgagor, whereas the real mortgagor was O’Rourke.
In Giarratano v. Angermeier, 7 La.App. 375, the name which should have been recorded was “Callock”, whereas the certificate applied for was in the name of “Colark”. We said: “ •*, * * The names of ‘Colarle’ and ‘Callock’ are evidently different. Certainly different for the Conveyance Office where the researches are made from an index alphabetically arranged. In looking for the name ‘Callock’ the clerk would not run the letter ‘O’ nor the letter ‘A’ in looking for ‘Colark’, nor would any third person searching for a sale.”
We find several adjudications in other jurisdictions, and in only one case do we find a result different from that which we ourselves have reached. That is Stott v. Irwin, Common Pleas of Chester County, Pennsylvania, V. 2, Chest. Co. Rep. 137, the syllabus of which reads as follows: “The omission of the middle initial of a defendant’s name, in a mechanic’s lien, will postpone the lien to others correctly entered with the initial.”
While we do not ■ agree with that' conclusion, we call attention' to the' fact that *682 it merely requires that the middle initial he used in .the recordation of a judgment or a lien. That was done in the case at bar.
Our conclusion is that the recordation of the judgment against Sterling N. Harris affected the property standing in the name of Sterling Harris.
We note another contention of defendant-appellant and that is, that if this judgment is permitted to he executed against this property, the effect will be violative of the provisions of the Servicemen’s Readjustment Act of 1944, as amended, 38 U.S.C.A. § 693 et seq., for the reason that this act limits the amount of a loan which may be made to any veteran and this property was bought with the aid of such a loan and the maximum amount was loaned by the Veterans Administration.
If the execution of this judgment against the property has that result, that is merely unfortunate for the Veterans Administration, but surely it could not be held that the holder of a valid and properly recorded judgment against the owner of property could be deprived of his right to execute the judgment by seizure of the property because it had been sold to a veteran.
• There is left for consideration only the question of whether the judgment, insofar as it dismisses the call in warranty, as in case of nonsuit, may be amended in favor of the defendants in warranty. ■ Defendants have offered no evidence whatever. There is not one word to show why a real estate agent, who negotiates a purchase, should be liable' to the ‘purchaser in the event there is a cloud on the title. Nor is there one word to show that there was a certificate secured from the Recorder of Mortgages. Nor is there proof that the homestead association received a fee for title examination. The notarial act by which Montgomery purchased from the homestead association contained a stipulation that the .transfer was made “without warranty and without recourse * *
In spite of these facts, however, we are powerless to amend the judgment in favor of the defendants in warranty, since they did not answer the appeal nor have they ,taken independent appeals of their own.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.