388 So.2d 1173 (1980)
Kishore V. MOTWANI
v.
FUN CENTERS, INC. and Playgirl Shops of America, Inc.
No. 10996.
Court of Appeal of Louisiana, Fourth Circuit.
September 9, 1980.
*1174 Henican, James & Cleveland, C. Ellis Henican, Jr., New Orleans, for plaintiffs-appellants.
Polack, Rosenberg, Rittenberg & Endom, Charles T. Curtis, Jr., and Leon H. Rittenberg, Jr., New Orleans, for defendant-appellee, Fun Centers, Inc.
Lanny R. Zatzkis, New Orleans, for Playgirl Shops of America, Inc., defendant-appellee.
Before SAMUEL, REDMANN and SARTAIN, JJ.
SAMUEL, Judge.
Plaintiffs, Kishore V. Motwani, Giani V. Gethwani, wife of/and Verhomal J. Motwani, owners of certain immovable property located at 227-233 Bourbon Street in New Orleans, filed suit to evict defendants, Fun Centers, Inc. and its sublessee, Playgirl Shops of America, Inc. The basis of plaintiffs' suit is that the written lease to Fun Centers, Inc. was not registered in the public records of Orleans Parish.
Following trial in the district court, there was judgment denying plaintiffs' eviction attempt apparently on the basis that plaintiffs knew about the lease and subjected themselves to it upon purchase of the property in suit. Plaintiffs have appealed from that judgment.
The record shows that on May 6, 1976, the then owners of the property in question leased a portion of it to Fun Centers, Inc. This lease was not registered in the conveyance records of Orleans Parish. On January 21, 1977 Fun Centers, Inc. in turn subleased the premises to Playgirl Shops of America, Inc. with the permission of the owners. This sublease was registered in the conveyance records.
On December 12, 1977, the property was sold to Mr. and Mrs. Nick Karno and Mr. and Mrs. Frank Caracci. On the same date the purchasers executed a document titled "Assignment of Lease, Rents and Profits" in favor of the National American Bank in New Orleans as additional security for the bank in the event of a default on purchasers' mortgage. The assignment of the lease specifically referred to the original lease to Fun Centers, Inc. and the sublease to Playgirl Shops of America, Inc., and the assignment was registered in the conveyance records of Orleans Parish.
Playgirl Shops of America, Inc., the sublessee, used the trade name "Disco Stop". On December 14, 1977 Verhomal J. Motwani, plaintiff herein, executed an agreement to purchase from Karno and Caracci the property subject to the lease, and in the agreement to purchase plaintiffs acknowledged the existence of a lease in favor of Disco Stop and two other lessees. The testimony indicates copies of the leases were furnished to Motwani before he purchased the property.
On February 24, 1978, plaintiffs took title to the property from the Karnos and the Caraccis, and in the act of sale the vendors warranted they had not alienated the property except for the assignment of lease, rents, and profits which they had previously made in favor of the National American Bank. On the same date and before the same notary public, plaintiffs executed their own assignment of lease, rents, and profits to the National American Bank, which assignment specifically acknowledged and assigned the lease of Playgirl Shops of America, Inc. and referred to it as follows:

*1175 "That certain lease and sublease by Charles J. Napoli and John J. Elms, Jr., Joyce Elms Roche and Regina Elms Mauberret to Playgirl Shops of America, Inc. covering that part of the first floor of 227-233 Bourbon as shown in lease approximately 1033 square feet."
In their original brief, plaintiffs based their position almost entirely on the public records doctrine which states that the public records are dispositive of the rights of purchasers of immovable property regardless of their actual knowledge of adverse rights of third persons in or to the property.[1] This doctrine was intended to protect innocent third parties who have no knowledge of the existence of any rights and/or claims against property, and allows them to take free and clear of any such unrecorded claims. The doctrine has been enforced even where the purchaser had actual knowledge of the outstanding unrecorded claims. However, the public records doctrine is not pertinent to the present case under its facts.
Defendants rely on Brown v. Johnson,[2] in which the court stated that all persons have constructive notice of the existence and contents of recorded instruments affecting immovable property, and when such an instrument contains language which fairly places a purchaser on inquiry as to the title and he does not avail himself of the means and facilities at hand to obtain knowledge of the true facts, he is to be considered as having purchased the property at his own risk and peril. However, we likewise need not consider this exception to the public records doctrine because of facts found by us.
The record is clear that in the act of sale by which plaintiffs acquired title to the property the assignment of the lease by their vendors to the National American Bank of New Orleans was made the subject of an exception to unincumbered title. More important, however, is the fact that plaintiffs on the same day of their acquisition themselves executed an assignment of the same lease in favor of the same bank in order to furnish the lending bank additional security for its loan. Hence, the plaintiffs, with full knowledge, expressly assumed the lease obligations of their vendors and simultaneously acknowledged this assumption by means of an assignment of the lease to the bank. Because plaintiffs contractually assumed the obligation of the lease, the lease became their obligation and the Public Records Doctrine was rendered inapplicable.
A similar case, Stanley v. Orkin Exterminating Co., Inc.,[3] was decided by the First Circuit. In that case, Orkin entered into a written lease with the owner of the property but failed to record it. The owner subsequently sold the property to a Mr. and Mrs. Owens, who orally acknowledged the lease in favor of Orkin and accepted monthly rental payments from it. Eventually Stanley, the plaintiff, entered into a written agreement to purchase the property from Mr. and Mrs. Owens, and the agreement to purchase provided the sale of the property was subject to the Orkin lease. The sale to Stanley did not mention the lease, and he brought eviction proceedings against Orkin claiming the sale was free from the lease because he only intended to honor a recorded lease. Plaintiff testified he knew Owens intended to sell subject to the Orkin lease, and he acknowledged he was given a copy of the lease at the signing of the purchase agreement. The First Circuit held for Orkin, stating the public records doctrine was not applicable to the facts before it. The court found that the intent of the parties throughout the entire transaction was that the property was sold subject to the Orkin lease and this intention was expressly stated in the purchase agreement and impliedly agreed to by Stanley's accepting monthly rental payments from Orkin.
In a supplemental brief, plaintiffs contend that defendants could avail themselves *1176 of plaintiffs' actions only upon a showing that these actions constituted a stipulation pour autrui. The argument is without merit. Plaintiffs cannot use a known lease for their benefit by assigning it to a bank in order to obtain financing and later claim they did not have knowledge of the tenant or of the lease from which the assignment was derived. Having made the lease their own, they are obliged to maintain defendants in peaceable possession of the premises.
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.
NOTES
[1] LSA-R.S. 9:2721 and 9:2722; McDuffie v. Walker, 125 La. 152, 51 So. 100.
[2] La.App., 11 So.2d 713.
[3] La.App., 360 So.2d 225.