475 So.2d 52 (1985)
Samuel M. THOMAS, Jr. and Thomas Management Corporation, Plaintiffs-Appellants,
v.
Billy R. LEWIS and Paula Hipp, dba World of Toys, Defendants-Appellees.
No. 17078-CA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1985.
*53 McLeod, Swearingen, Verlander & Dollar by David E. Verlander, III, Monroe, for plaintiffs-appellants.
William H. Hallack, Jr., Monroe, for defendants-appellees.
Before HALL, MARVIN and SEXTON, JJ.
SEXTON, Judge.
Plaintiffs in this cause are Samuel Thomas and Thomas Management Corporation, owners of the McMillan Mall Shopping Center in West Monroe, Louisiana. Defendants are Billy R. Lewis and Paula Hipp doing business as World of Toys, a concern which occupies space in McMillan Mall. Plaintiffs instituted this action seeking defendants' eviction claiming that defendants had no valid lease agreement with plaintiffs. After a hearing, judgment adverse to the lessors was rendered. This appeal ensued. We affirm.
The evidence reflects the following chronology of events. On January 12, 1976, McMillan Center, Inc. leased space in McMillan Mall to World of Toys with a primary lease term of five years, with two five year options to renew. The lease, which requires written exercise of the options, was not immediately recorded. On December 21, 1977, an instrument was recorded reflecting the sale by McMillan Center, Inc. of its right, title and interest to the mall to L'Dessa Kay Ann Courville, Evangeline Permenter and Harold McMillan (hereinafter the McMillan heirs). On June 1, 1979, World of Toys recorded its lease. On September 8, 1980, World of Toys exercised the option to renew the lease by letter. On May 11, 1983, Mrs. Courville sold her undivided one-third interest in the property to Samuel M. Thomas. At the same time, by separate instrument, Mrs. Courville sold to Mr. Thomas her interest in various tangible and intangible property connected with the mall, including "[a]ny and all leases affecting the property described in EXHIBIT `A' including but not limited to those depicted in EXHIBIT `C' hereto." Item 11 of Exhibit "C" refers to the World of Toys lease.
On October 29, 1983, Evangeline Permenter and Harold McMillan sold their two-thirds interest in the mall to Thomas Management Corporation. This deed recites:
* * * Vendees taking said property subject to any and all mortgages, leases, right or ways, and easements of record, to the extent they may validly affect the property described in Exhibit "A" said mortgages, collateral assignments, right of ways, easements and leases being neither ratified nor confirmed by Vendors.
Appellants assert that the World of Toys has no valid lease as the public records reflect only a lease which expired on January 11, 1981, two years prior to their acquisition of the property. They assert that because nothing in the public records reflects *54 the exercise of the lease option, that they are not bound as a third party purchaser by any extension of the lease resulting from the exercise of an option clause. Appellants thus contend that they considered World of Toys to be occupants on a month-to-month basis.
The trial court concluded that the failure to record the exercise of the option did not defeat the lease because Thomas and Thomas Management should have taken notice from the mention of the lease in their respective acquisition documents that it existed and deduced therefore that the option had been exercised. The trial court further found as a fact that the option had been exercised by the letter of September 8, 1980, and that the recordation of the lease out of sequence was enough to make it effective as to third parties.
The sole issue for resolution by this Court is whether the exercise of an option to renew in a recorded lease is required to be recorded in order to have effect as to third party purchasers of the property.
LSA-R.S. 9:2756[*] provides:
§ 2756. Effectiveness of unrecorded acts affecting immovables; effect of subsequent recordation
All sales, contracts and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of the recording.
The recording shall have effect from the time when the act is deposited in the proper office, and indorsed by the proper officer.
LSA-R.S. 9:2721 lists more completely the acts which must be recorded to be valid against a third party:
§ 2721. Filing in office of parish recorder
No sale, contract, counter letter, lien, mortgage, judgment, surface lease, oil, gas or mineral lease or other instrument of writing relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and until filed for registry in the office of the parish recorder of the parish where the land or immovable is situated; and neither secret claims or equities nor other matters outside the public records shall be binding on or affect such third parties.
On the basis of the public records doctrine, third persons need only to look to the public records to determine adverse claims. McDuffie v. Walker, 125 La. 152, 51 So. 100 (1909). All persons are held to have constructive notice of the existence and contents of recorded instruments affecting immovable property. Where a recorded instrument has language that fairly puts a third person on inquiry as to the title and he does not avail himself of the means and facilities at hand to obtain knowledge of the true facts, he is to be considered as having bought at his own peril. Wells v. Joseph, 234 La. 780, 101 So.2d 667 (1958); Brown v. Johnson, 11 So.2d 713 (La.App.2d Cir.1942); Florida Gas Exploration Co. v. Bank of St. Charles and Trust Company, 435 So.2d 535 (La.App. 5th Cir.1983); Judice-Henry-May Agency, Inc. v. Franklin, 376 So.2d 991 (La.App. 1st Cir.1979). When one is put on inquiry as to title, availing one's self of "means and facilities at hand" requires an examination of any necessary public records, but not a wide ranging search of unrecorded documents. See Judice-Henry-May Agency, supra.
Appellants find solace in the case of Julius Gindi and Sons, Inc. v. E.J.W. Enterprises, Inc., et al., 438 So.2d 594 (La.App. 4th Cir.1983). In Gindi, plaintiff-lessee entered into a lease with a five year primary term which expired on December 31, 1979. The lease contained a five year extension provision stipulating the same terms. On February 4, 1977, plaintiff exercised the *55 option to extend the lease and notified defendant's ancestor in title by certified letter. The original lessor sold the premises to another party, Mutual, who in turn sold the property to Manton. The sale to Mutual was subject to a purchase agreement wherein it was stated that the sale was made subject to existing leases. Thereafter, Manton exchanged the leased property for property owned by E.J.W., the defendant. After notice to vacate, Gindi filed suit to have its lease recognized as valid and binding on the defendants. Plaintiff argued that the provision of the lease allowing it a five year extension should have placed a duty on the defendants to inquire whether the option had been exercised. E.J.W., the defendant, argued that the duty to inquire was limited to an investigation of the public records, and because the notice of renewal was not recorded, it was not binding upon third parties.
The Fourth Circuit Court of Appeal agreed with defendant and held that the duty to inquire should be limited only to recorded instruments as unrecorded instruments have no effect as to third parties.
Under somewhat similar facts, in Port Arthur Towing Company v. Owens-Illinois, Inc., 352 F.Supp. 392 (W.D.La.1972), the court rejected a litigant's contention that a renewal option must be recorded in order to be valid against a third party purchaser of the property. The court found significant that (1) under the option clause, the lessee could potentially renew the lease until the year 2013; (2) that the lessee had an unrestricted right to assign; and (3) that the lease was in effect after the initial ten year term had expired. Given this set of significant facts, the court noted that the purchaser had constructive notice of these recorded instruments affecting the property and held that the language of these documents fairly put them on notice that the property was potentially burdened with the currently effective lease. This decision was disapproved by the Fourth Circuit in Gindi. In so doing, the Gindi court noted that:
The facts in PATCO are almost identical to the ones in this case. The federal district court held that the existence of the option clause created a duty to inquire outside of the record. We believe that this decision is incorrect in view of the dictates of Louisiana law. The duty to inquire should be limited only to recorded instruments because unrecorded instruments have no effect upon third parties. Generally, a duty to inquire outside of the record would be fruitless for even if something does exist it would not be binding upon third parties.
The Gindi case is somewhat factually distinct from the instant case. The instrument transferring the tangible and intangible property connected with the mall from Courville to Thomas made reference to the World of Toys lease, two and one-half years after the expiration of the primary term. Furthermore, plaintiff-appellants accepted rental payments and allowed defendant's peaceful enjoyment of the premises for many months after they acquired the subject property. In contrast, in the Gindi case, the purchaser of the property sent the eviction notice within three days after purchasing the property. Additionally, in Gindi, the act of sale to the ancestor of E.J.W. stated that "[v]endor declares and warrants that the lessee therein did not exercise its option to renew said lease but that after the original term ended on December 31, 1979, continued its occupancy on a month-to-month basis." Consequently, in Gindi, the public records reflected that the lease option had not been exercised, and the tenant was occupying the premises on a month-to-month basis at the time of defendants' acquisition of the property.
In the instant case, the public records reveal a valid recorded lease with an option clause under which the lessee could potentially renew the lease until 1991. The documents by which plaintiff acquired the property still mention the lease years after the primary term of the lease had expired. From the recited facts present in the public records the purchaser *56 was clearly put on notice that the lease was in effect after its primary term.
A recorded lease containing an option to renew puts the purchaser on notice of a potential claim against the property. We conclude that the exercise of an option to renew under a recorded lease need not be recorded in order to have effect against third persons, and thus we agree with the views espoused in Port Arthur Towing Company v. Owens-Illinois, Inc. To the extent that the Gindi holding is in conflict with this conclusion, it is disapproved. Accordingly, the judgment of the trial court is affirmed. All costs of this appeal are assessed against appellant.
AFFIRMED.
NOTES
[*] LSA-C.C. Art. 2266 was redesignated as LSA-R.S. 9:2756 by Act No. 331 of 1984, effective January 1, 1985.