477 So.2d 1267 (1985)
FIRST FINANCIAL BANK, F.S.B.
v.
Mary Vaughn, Wife of/and James J. JOHNSON, Dryades Savings & Loan Assoc.
No. CA-3181.
Court of Appeal of Louisiana, Fourth Circuit.
October 11, 1985.
*1268 Dutel & Dutel, Peter S. Thriffiley, Charles J. Nunez, New Orleans, for appellee-First Financial Bank.
D. Michael Dendy, Susan Stagg Robinson, New Orleans, for intervenor-appellant.
*1269 Before WILLIAMS and ARMSTRONG, JJ., and PRESTON H. HUFFT, J. Pro Tempore.
PRESTON H. HUFFT, Judge Pro Tempore.
In this contest between conventional mortgagees, the issue is whether a recorded mortgage executed by "James J. Johnson" on real property owned and registered on the public records in the name of "James Johnson" affords sufficient notice of the encumbrance to third parties so as to prime a subsequent mortgage of the same property. Because we conclude that the later mortgagee was entitled to rely upon the name "James Johnson" as that of the record owner under the Public Records Doctrine, we hold that the earlier mortgage is inferior and subordinate, where an examination of the public records for encumbrances against property owned in the name of "James Johnson", without specification of any middle initial, failed to disclose the existing mortgage.
On January 20, 1978, James Johnson acquired real property located at 3101-03 Broadway Street in New Orleans in a sale captioned and recorded as follows: "Sale by Josephine Sagnibene, wife of/and Frank Costa to James Johnson". On June 15, 1982, Johnson and his wife mortgaged this property and a second piece of real estate located at XXXX-XX-XX ½ Forstall Street. This mortgage was captioned and recorded as follows: "Mortgage by Mary Vaughans wife of/and James J. Johnson in favor of First Homestead Federal Savings and Loan Association". Johnson had acquired the Forstall Street property on June 12, 1975 in an act of sale by "Dixie Homestead to Mrs. Gearleen Abrin wife of/and James J. Johnson".
On August 4, 1982, Johnson sold the Broadway Street property to Dryades Savings and Loan Association in an instrument entitled: "Sale by James Johnson to Dryades Savings and Loan Association". Dryades Savings had requested and received mortgage and conveyance certificates for the name of "James Johnson" as the record owner of the Broadway Street property from the Recorder of Mortgages and Register of Conveyances for the Parish of Orleans. The certificate from the Recorder of Mortgages did not reflect the existence of any mortgage in favor of First Homestead Federal Savings and Loan on the Broadway Street property. Dryades Savings subsequently sold the Broadway Street property to Mr. & Mrs. James J. Landry, Jr., who executed a mortgage on the property in favor of Dryades on August 4, 1982.
On October 25, 1983, First Financial Bank, the successor to First Homestead Federal Savings and Loan, filed a petition for executory process to foreclose on both the Broadway Street and Forstall Street properties. Dryades Savings intervened and prayed for an injunction to arrest the seizure and sale of the Broadway Street property, on the grounds that First Financial Bank's mortgage was inferior because it had been improperly drawn in the name of "James J. Johnson" instead of the record name of "James Johnson".
At the hearing on the petition of intervention, Francis J. Demarest, Jr. the Recorder of Mortgages for Orleans Parish, testified that the mortgage certificate requested by Dryades Savings was in the name of "James Johnson" without any middle initial, wife's name, or marital status. He stated that the certificate had been run in the name of "James Johnson" as requested, and that no encumbrances or inscriptions of any nature were given for the name James Johnson with any middle initial. The face of the pertinent mortgage certificate bears a printed proviso that the certificate has "... been run exclusively in the exact names here under set forth and not any variations of any said names" and "... where no middle initials have been furnished, identical names with middle initials have not been run and will not be unless specifically requested."
The trial judge dismissed the injunction and recognized First Financial as the "first mortgage holder on the property at 3101-03 Broadway Street, New Orleans, Louisiana". *1270 In oral reasons for judgment, the judge found that the name "James J. Johnson" was "a lot more explicit" than the name "James Johnson", and noted: "If the Dryades Homestead had probably been a little more explicit in their request for certificates, they probably would have come up with `James J. Johnson' because at the top of the certificate, they say they only search in the names submitted, which was `James Johnson' without the middle initial."
Appealing, Dryades Savings contends that in examining Johnson's title for encumbrances under the Public Records Doctrine it was entitled to rely solely on the name "James Johnson" as the record owner of the Broadway Street property, and should not be prejudiced by First Financial's fault in recording its mortgage in the name "James J. Johnson" instead of the record name. On the other hand, First Financial argues that Dryades Savings was negligent in failing to observe its duty as a lending institution to determine the full name of the vendor of the property and any other names that he may have used, particularly where the Recorder of Mortgages requires that a different certificate be issued for each Christian name with a different middle initial.
Under the Public Records Doctrine, a third person, such as a potential mortgagee searching for encumbrances on the potential mortgagor's title, need only look at public records to determine adverse claims. LSA-R.S. 9:2721-2722; Judice-Henry-May Agcy, Inc. v. Franklin, 376 So.2d 991 (La.App. 1st Cir.1979), writ denied 381 So.2d 508 (La.1980); Brewster Development Company, Inc. v. Fielder, 271 So.2d 299 (La.App. 2nd Cir.1972), application not considered, 272 So.2d 695 (1973). The Public Records Doctrine is intended to protect those third parties by what they find or could have found in the public records, i.e., one who deals with the record owner is protected vis-a-vis the true owner. Sick v. Bendix-United Geophysical Corp., 341 So.2d 1308 (La.App. 1st Cir.1976).
Applying these principles to the instant case, we conclude that Dryades Savings, a mortgagee entitled to the protection of the Public Records Doctrine, properly relied on the name of "James Johnson" as the name of the record owner of the Broadway Street property in its title search. The title to 3101-03 Broadway Street was listed in the name "James Johnson" without any middle initial in an act of sale whereby Johnson acquired the property upon declaration that he had never been married. In the act of sale of August 4, 1982, "James Johnson" who declared under oath that he had never been married, sold the Broadway Street property to Dryades Savings, which had properly requested and received from the Recorder of Mortgages and Register of Conveyances conveyance certificates run in the name of "James Johnson" as the record owner. That diligent title search did not reveal First Financial's mortgage inscribed in the name of "James J. Johnson". Under these circumstances, we conclude that First Financial's mortgage was not effectively recorded so as to prime Dryades Saving's later mortgage on the same property. Although "James Johnson" and "James J. Johnson" are alternate names of the same person, Dryades Savings should not be held responsible for discovering First Financial's pre existing mortgage where it was not inscribed in the exact name of ownership according to the public records.
Significantly, this litigation is a contest between two competing conventional mortgagees. First Financial, the earlier mortgagee, had the duty of properly styling the name of its mortgagee in the act of mortgage. Although "James J. Johnson" was the record owner of the Forstall Street property, which was mortgaged together with the Broadway Street real estate, First Financial Bank knew or should have known that record title to the Broadway Street property was in the different name of "James Johnson" without any middle initial. By adding the middle initial to Johnson's name in the act of mortgage on the Broadway Street property, First Financial Bank proceeded at its own peril in registering the mortgage in a name differing from *1271 the name on the public records, even though it was dealing with one and the same individual. Under these circumstances, First Financial knew or should have known that any subsequent third parties, such as Dryades Savings, would deal with the name of the record owner as it appeared in the Broadway Street title rather than an alternate appellation.
Accordingly, insofar as conventional encumbrances are concerned, we hold that a third party who undertakes a title examination is free of any duty to search the public records for variations of the owner's name, but may proceed with the search solely on the basis of the name of the record owner. The trial judge's holding that Dryades Savings should have been "more explicit in their request for certificates" imposes a duty on this third party that is not required under the Public Records Doctrine.
In so holding, we distinguish Succession of Montgomery, 46 So.2d 677 (La.App. Orleans 1950), relied on by First Financial Bank. In Montgomery, a creditor obtained and recorded a judgment against "Sterling N. Harris". At the time of recordation, the judgment debtor Harris owned real estate in the record name of "Sterling Harris" without a middle initial. Subsequently, Harris sold the property to a third party. The issue in the cited case was whether the judgment creditor could thereafter execute the judgment against Harris by seizing and selling the property then owed by the third party. We held in Montgomery that the property could be seized and that the recordation of the judgment against Sterling N. Harris affected property standing in the name of Sterling Harris, notwithstanding the absence of the middle initial in the judgment debtor's title. In Montgomery, therefore, we were concerned with the effect of a judicial mortgage, which under LSA-C.C. Art. 3228 "... may be enforced against all the immovables which the debtor actually owns or may subsequently acquire".
In the instant case, unlike Montgomery, we are dealing with recordation of a conventional mortgage, not a judicial mortgage, in a dispute between two mortgagees. Herein lies a distinction. In a situation involving a judicial mortgage, the judgment creditor is powerless to amend the name of the debtor as set forth in the judgment. See Metairie Bank and Tr. Co. v. Wendryhoski, 338 So.2d 978 (La.App. 4th Cir.1976), writ granted 341 So.2d 414 (La.1977). On the other hand, a conventional mortgagee has the ability, indeed the duty, to caption or style the act of mortgage so as to set forth the mortgagor's proper name in conformity with his name as owner of the mortgaged property on the public records. For this reason, the Montgomery decision, which involved a judicial mortgage without consideration of draftmanship, is inapposite to the facts now confronting us in this appeal.
In the instant case, First Financial Bank had copies of Johnson's titles to both pieces of real estate to be mortgaged, and is therefore charged with notice that "James Johnson" was the recorded name of the owner of the Broadway Street property in contrast to "James J. Johnson", the recorded name of the owner of the Forstall Street property. Having chosen to deal with both pieces of property within a single instrument or act of mortgage, First Financial Bank as drafter of the instrument should have captioned and recorded the act of mortgage as "Mortgage by Mary Vaughans wife of/and James J. Johnson a/k/a James Johnson in favor of First Homestead Federal Savings and Loan Association", in order to protect its interest as mortgagee of both pieces of real estate. By failing to record its mortgage in both variations of Johnson's name, First Financial Bank ran the risk that innocent third parties concerned with 3101-03 Broadway, like Dryades Savings, might later search the public records in the record name of "James Johnson" yet fail to discover First Financial's mortgage in the name of "James J. Johnson" on the Broadway Street property.
In this contest between two conventional mortgagees, therefore, the first mortgagee, *1272 First Financial Bank, was in a better position to inscribe its mortgage properly to conform to the public records. Its failure to do so should not prejudice the later conventional mortgagee, Dryades Savings, who relied on the record name of ownership in searching the public records and drafting its own act of mortgage.
Accordingly, for the foregoing reasons, the judgment of the trial court is reversed and set aside. Judgment is now rendered as follows: "IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, that there be judgment in favor of Dryades Savings and Loan Association, and against First Financial Bank, FSB, subordinating the mortgage of First Financial Bank on the property located at 3101-03 Broadway Street, New Orleans, Louisiana, to the mortgage therein of Dryades Savings and Loan Association.
REVERSED AND SET ASIDE; RENDERED.