WILLIAMS, Judge.
This is an appeal by plaintiff, Dixie Savings and Loan Association [“Dixie”], from a decision of the trial court denying Dixie’s petition for declaratory judgment. Dixie sought a determination of its rights under a mortgage agreement it had made with defendant William Napier. The trial court concluded that the mortgage erroneously captioned and recorded by Dixie in the name of “William P. Napier” was not effective as to subsequent third party purchasers. It is from this decision that Dixie now appeals.
In 1978, William D. Napier took title to certain real estate in the name of “William D. Napier”. At the time of acquisition, he executed a mortgage in favor of Interstate Federal Savings and Loan Association [“Interstate”]. The mortgage was duly recorded under the name “William D. Napier”. On February 23, 1980, he placed a second mortgage on the property in favor of Dixie. This mortgage document was captioned in the name “William P. Napier” and was also recorded and indexed under the name “William P. Napier”. Mr. Napier's signature on the document, however, appeared as “William D. Napier”. On June 19, 1980, Mr. Napier sold the property to defendant Marcia J.B. Sharp. Prior to the act of sale, a title abstract was done and the mortgage records searched in the name of William D. Napier. The mortgage certificate obtained in the name of William IX Napier showed the only open mortgage to be the Interstate mortgage and failed to reveal the Dixie mortgage. Mr. Napier did not disclose the existence of the Dixie mortgage and, in fact, continued to pay on the debt until he filed bankruptcy on December 9, 1982. Dixie was unaware of the sale of the property to Marcia Sharp until it received notice of the bankruptcy proceedings. Dixie, thereafter, made no claim in the bankruptcy but filed for declaratory judgment seeking a determination of its rights under the mortgage agreement.
Dixie argues that the lower court was in error in finding that: (1) the mortgage recorded in the name of William P. Napier is not effective as to third parties, and (2) the notary performing the title examination is under no obligation to check further than inscriptions in the exact name of William D. Napier.
The issue presented on appeal is whether a mortgage executed and recorded by the mortgagee with the incorrect middle initial of the mortgagor is effective as to subsequent third party purchasers. Dixie contends that a recorded mortgage attaches to the property and remains in full force and effect through a transfer to a third party. La.Civ.C. arts. 3282, 3342; La.C.Civ.Pro. art. 3741. Dixie also argues that when a recorded instrument causes a third party to inquire into the records and he does not do so that he purchases at his own risk; and if information contained in public records would incite inquiry, purchaser should inquire into title. Thomas v. Lewis, 475 So.2d 52 (La.App. 2nd Cir.1985); Board of Commissioners of Caddo Levee District v. The S.D. Hunter Foundation, 342 So.2d 720 (La.App. 2nd Cir.1977). Dixie maintains that three expert title examiners all testified they would have examined the Dixie mortgage in question in their title search. The experts offered as reasons for *159 such “incitement”: (1) the similarity of sound between “D” and “P” and (2) the number of inscriptions under William D. versus the single inscription under William P.
Dixie further submits that the mortgage office indices are merely a convenient method devised to aid in the search of the public records and it is the actual recorded mortgage document that is the public record needed to be examined for adverse encumbrances. Dixie claims that an inspection of the Dixie mortgage would have revealed that while the typed name was William “P.” Napier, the signature was William “D.” Napier.
Dixie finally contends that the decision in First Financial Bank, F.S.B. v. Johnson, 477 So.2d 1267 (La.App. 4th Cir.1985), goes against the long standing jurisprudence that an error in or omission of a middle initial in a mortgage does not make it invalid as to third persons. Hardie v. Justice, 353 So.2d 384 (La.App. 4th Cir.1977); Modern Finance Co. v. Montgomery, 46 So.2d 677 (La.App. 4th Cir.1950); Tranchina v. Williams, 10 La.App. 656, 120 So. 882 (4th Cir.1929).
The facts of the Johnson case are similar to the case currently before this Court. A man named James Johnson acquired property in 1978 in the name of James Johnson. In June of 1982 he put a second mortgage on the property, in the name of James J. Johnson, in favor of First Financial Bank. In August of 1982, Johnson sold the property to Dryades Savings and Loan in an instrument entitled with the name James Johnson. In searching the title, Dryades ran a mortgage certificate in the name of “James Johnson” only. The certificate did not reflect the 1982 mortgage in favor of First Financial Bank. In October of 1983, First Financial filed a petition to foreclose on the property, and Dryades intervened, claiming that the First Financial mortgage had not been properly recorded for purposes of the Public Records Doctrine. First Financial argued that Dryades was negligent in failing to determine the full name of the vendor of the property and any other names that he may have used. This Court held that:
[Ijnsofar as conventional ehcumbrances are concerned, we hold that a third party who undertakes a title examination is free of any duty to search the public records for variations of the owner’s name, but may proceed with the search solely on the basis of the name of the record owner. 477 So.2d at 1271.
This Court stated' that “Dryades Savings should not be held responsible for discovering First Financial’s preexisting mortgage where it was not inscribed in the exact name of ownership according to the public records.” We held that “First Financial, the earlier mortgagee, had the duty of properly styling the name of its mort-gag(or) in the act of mortgage ... First Financial Bank proceeded at its own peril in registering the mortgage in a name differing from the name on the public records, even though it was dealing with one and the same individual.” Id. at 1270-1271. This Court also said because First Financial Bank had been in a better position to inscribe its mortgage properly, that is failure to do so should not prejudice those who relied on the record name of ownership in searching the public records. Id. at 1272.
Like First Financial, Dixie failed to use the name by which the property ownership had been inscribed. Dixie not only was in a better position to inscribe its mortgage with the correct name, but had the duty of properly styling and recording the name “William D. Napier” in the act of mortgage.
Dixie’s citations to prior jurisprudence are distinguishable from the case at bar. The case of Modem Finance Co. v. Montgomery dealt with a judicial mortgage, not a conventional mortgage. This Court was cognizant of the holding in Montgomery when it reached its decision in Johnson. It noted that a judgment creditor is powerless to change the name of the debtor as set forth in the judgment. The case of Tran-china v. Williams was an action against the Recorder of Mortgages and turns on the fact that the mortgage certificate was issued after plaintiff had already pur *160 chased the property, so that plaintiff could not have been damaged by the clerk’s certificate, no matter what name was used. Finally, the case of Hardie v. Justice was also an action against the Recorder of Mortgages on the issue of the duty and liability of said recorders.
We also reject Dixie’s argument that the Johnson case can be read as being limited to common names.
For the foregoing reasons, the decision of the trial court denying Dixie’s petition for declaratory judgment is affirmed. All costs of this appeal are to be borne by appellant.
AFFIRMED.