**FIRST ACADIANA BANK**

v.

**W. Simmons SANDOZ, Trustee.**

**Civ. A. No. 86–3425 "L".**

United States District Court,
W.D. Louisiana,
Lafayette-Opelousas Division.

March 31, 1987.

---

Hank S. Hannah, Eunice, La., for plaintiff.

W. Simmons Sandoz, Opelousas, La., for defendant W. Simmons Sandoz, trustee.

Charles F. Boagni, III, Opelousas, La., for defendant St. Landry Homestead Assoc.

## OPINION

DUHE, District Judge.

This ruling concerns an appeal from the United States Bankruptcy Court pursuant to 28 U.S.C. § 158(a). For the reasons outlined below, the decision of the Bankruptcy Court in *In re Guillory*, 66 B.R. 8 (Bankr.W.D.La.1986) (Bernard, B.J.), is reversed.

### THE ISSUE PRESENTED

This Court concurs with the Bankruptcy Judge's determination that the facts of a recent Louisiana Court of Appeals decision are indistinguishable from those presented here. *See Guillory*, 66 B.R. at 9. That case, *First Financial Bank v. Johnson*, 477 So.2d 1267 (4th Cir.1985), holds that a mortgagee has a duty to register an act of mortgage so that the mortgagor's name conforms exactly with the record of his name as the owner of the mortgaged property. *Johnson*, 477 So.2d at 1271. Conversely, the Johnson Court held that a third party undertaking a title examination is free of any duty to search the public records for variations of the property owner's name, but may restrict his search to the owner's name as recorded. *Id.* There is no subsequent history to the case, nor has it been cited in any reported decision save *Guillory*.

If *Johnson* controls the present dispute, appellant First Acadiana Bank's ("FAB") unexplained recordation of a mortgage under the names "Herman J. Guillory and Bessie Berzas Guillory" does not prime a subsequent mortgage taken by appellee St. Landry Homestead Association ("SLHA"). SLHA relied on a mortgage certificate issued in the names of the property owners as recorded, "Herman B. Guillory and Bessie Berzas Guillory." That certificate did not reflect FAB's prior mortgage.

The Bankruptcy Court recognized that *Johnson* holds contrary to the great weight of Louisiana authority. The Court announced its own belief that the Louisiana recordation statutes are intended to provide subsequent creditors with notice, and that "a mortgage recorded under a nearly identical name, with the spouse's name the same, should serve to put a searcher on notice of that mortgage." *Guillory*, 66 B.R. at 9. However, the Bankruptcy Judge found the case binding as the latest pronouncement of the Louisiana Courts. The authorative value of *Johnson* is the dispositive issue on appeal.

### LAW AND ANALYSIS

This Court is empowered to independently review the application of *Johnson* to this case. *See North Texas Production Credit Association v. Lee*, 570 F.2d 1301, 1302 (5th Cir.1978) (district court review of legal conclusion).

■ In interpreting Louisiana law, the function of a federal court is to select the rule the state courts would adopt. *Green v. Amerada Hess Corporation*, 612 F.2d 212, 214 (5th Cir.), *cert. den.* 449 U.S. 952, 101 S.Ct. 356, 66 L.Ed.2d 216 (1980). The decisions of the state intermediate appellate courts are binding, absent a "strong showing" that the Louisiana Supreme Court would hold to the contrary. *Enola*

*Taylor v. Jim Walter Corp.*, 731 F.2d 266, 267 (5th Cir.1984); *see also Cormier v. Williams/Sedco/Horn Constructors*, 460 F.Supp. 1010, 1012 (E.D.La.1978) (state intermediate appellate decision unreviewable unless persuasive indications exist that highest state court would hold contrary to lower court). Thus, the applicability of a Louisiana Court of Appeals decision may be limited by a demonstrated inconsistency with the broad policies and principles underlying analogous case law. *See Medvecz v. Choi*, 569 F.2d 1221, 1226 n. 14 (3rd Cir.1977).

■ The Louisiana public records doctrine dictates that public records alone establish the rights of third parties in immovable property. La.Rev.Stat.Ann. §§ 9:2721, 9:2722 (West 1965); *McDuffie v. Walker*, 125 La. 152, 51 So. 100, 105 (1909); *Motwani v. Fun Centers, Inc.*, 388 So.2d 1173, 1175 (La.App.1980). The public records consist of the recorded instruments themselves. Indices reflecting these documents form no part of the public records. *See Swan v. Vogel*, 31 La.Ann. 38, 40 (1879); *Progressive Bank & Trust Co. v. Dieco Specialty Co., Inc.*, 421 So.2d 345, 347 (La. App.1982). Because FAB recorded its mortgage, SLHA is charged with constructive knowledge of the contents of that instrument. *See Pittsburg Plate Glass Co. v. Woodcock*, 150 So.2d 660, 663 (La.App. 1963).

■ A particularly significant corollary to the Louisiana law of recordation teaches that textual inaccuracies in a recorded instrument do not unnecessarily limit its validity. Language contained in a document can trigger a duty of further inquiry. *Port Arthur Towing Company v. Owens-Illinois, Inc.*, 352 F.Supp. 392, 398 (W.D.La. 1972), *aff'd* 492 F.2d 688 (5th Cir.1974); *Brown v. Johnson*, 11 So.2d 713, 716 (La. App.1942). For example, an incorrect description of real property in a mortgage is sufficient to serve as notice to third parties if the description is adequate to identify the property. *In re Vezinot*, 20 B.R. 950, 953 (Bankr.W.D.La.1982) (Bernard, B.J.); *Mid-State Homes, Inc. v. Knapp*, 156 So.2d 122, 125–26 (La.App.1963).

This principle is reflected in several cases involving omitted and incorrect middle initials. In *Hardie v. Justice*, 353 So.2d 384, 385 (La.App.1978), *writ den.* 354 So.2d 1379 (La.1978), a recorder of mortgages was held to be liable for damages when a mortgage certificate requested in the name "John Francis Short" failed to report a mortgage recorded in the name "John F. Short." The court found that the similarity between the two names triggered a duty to further examine the records. A comparison of the property descriptions would have resulted in a report of the prior mortgage. This decision, by a panel of the same circuit as the *Johnson* Court, was not considered in the *Johnson* analysis.

In *Succession of Montgomery*, 46 So.2d 677 (La.App.1950), a recorded judicial mortgage in the name "Sterling N. Harris" was held to prime the subsequent sale of property titled in the name "Sterling Harris." A title examination in that name had failed to reveal the judicial mortgage. Although *Montgomery* dealt with an omitted intitial, the Court considered the precise facts of this case in dicta, finding:

> [W]here the incorrect middle initial is given, ... we are of the opinion that the similarity would place upon the [third party] the duty of making certain that the two names did not represent the same person.

*Montgomery*, 46 So.2d at 680. The contours of the *Montgomery* "similarity" analysis were later defined in *Metairie Bank & Tr. Co. v. Wendryhoski, Etc.*, 338 So.2d 978 (La.App.1976), *writ granted* 341 So.2d 414 (La.1977), where a judicial mortgage recorded against "Ralph Diaz" was held ineffective to prime a subsequent transfer of property registered in the name of "Rafael Eduardo Diaz."

*Johnson* distinguished *Montgomery*, citing the ability of a conventional mortgagee to effect a mortgage in the exact name of the record owner. Because a judgment creditor is powerless to amend the judgment to conform to title peculiarities, the *Johnson* Court announced that the protection of *Montgomery* was limited to judicial mortgagees. *Johnson*, 477 So.2d at 1271.

This distinction is not compelling in light of *Montgomery's* reflection of the broader policy considerations supporting the public records doctrine. The effect of Louisiana's recordation scheme is twofold. First, it affords third parties notice of the state of title in property. Secondly, it protects interest holders in transactions involving third parties. *Watson v. Bethany*, 209 La. 989, 26 So.2d 12, 15 (1946). Balancing these concerns, Louisiana Courts developed a rule that a recorded instrument was effective if its content was sufficient to give notice of an interest. *See Pittsburg Plate Glass*, 150 So.2d at 663 and cases cited therein. Measured against this standard, the error concerning Guillory's initial could not suffice to invalidate recordation of FAB's mortgage.

This Court does not challenge the ability of the Louisiana Court of Appeals to make state law, nor question the substantive merit of its decisions. However, *Johnson* exchanges Louisiana's "notice" standard for an uncompromising "bright line" test. This holding effectively reverses established Louisiana jurisprudence. In the absence of countenance on the part of Louisiana's Supreme Court, *Johnson* cannot yet be considered to represent Louisiana law.

Accordingly, the judgment of the Bankruptcy Court is reversed. The case is remanded for an entry of judgment conforming with this opinion.